82

The State of Ohio, Appellant, v. Williams, Appellee.

[Cite as State v. Williams (1978), 55 Ohio St. 2d 82.]

(No. 77-1035—Decided July 12, 1978.)

Mr. *John T. Corrigan*, prosecuting attorney, and *Ms. Mary A. Lentz*, for appellant.
Mr. *Charles B. Lazzaro*, for appellee.

CELEBREZZE, J. It is now well established that under the "plain view" doctrine, police officers may seize evidence, instrumentalities or fruits of a crime without the necessity of having first obtained a search warrant specifically naming such items. *Ker* v. *California* (1963), 374 U. S. 23; *Harris* v. *United States* (1968), 390 U. S. 234. The sole issue presented by this appeal is whether Detective Tell's seizure of the Oldsmobile body parts can be justified under this exception to the warrant requirement.

In the course of analyzing the plain view doctrine in *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443, Mr. Justice Stewart stated the following at page 466:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvert-

ently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification— whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."

Hence, in order to qualify under the plain view exception, it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent.

The first requirement, a lawful initial intrusion, was clearly met in the instant cause, since the investigating officers were acting pursuant to a legitimate search warrant describing the location where the car parts were seized. The second requirement, an inadvertent discovery, was also satisfied. The record indicates that Detective Tell did not know, prior to the search, that appellee was in possession of stolen property. Therefore, our attention must focus on the third requirement, *viz.*, was the incriminating nature of the Oldsmobile body parts immedately apparent to Detective Tell.

Our review of the record fails to reveal a sufficient factual basis upon which Tell could have known, or had probable cause to believe, upon initial inspection of the automobile parts, that appellee was in possession of contraband. Quite to the contrary, the record discloses that it was necessary for Detective Tell to inquire as to where the two vehicles were purchased, and to place a telephone call to the auto salvage yard, before he became suspicious that the unattached body parts may have been stolen. More-

over, it was not until he had seized the parts, and thereafter conducted a two-month-long investigation, that Detective Tell knew for certain that some of the auto parts in appellee's possession had been stolen. Nevertheless, a search or seizure, illegal at inception, cannot be legitimatized by the results thereof. See *Byars* v. *United States* (1927), 273 U. S. 28; *Wong Sun* v. *United States* (1963), 371 U. S. 471.

The plain view doctrine is a court-created exception to the fundamental safeguard, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution, that warrants issued upon a proper showing of probable cause and particularly describing the items to be seized must set the constitutional limits to police intrusions into the lives of the citizenry. One primary objective of the warrant requirement is that searches deemed necessary should be as limited in scope as possible. Otherwise, the issuance of a warrant would serve as the justification for a general search, during which police officers could rummage through a person's belongings in quest of unidentified incriminating evidence.

We decline to contort the plain view doctrine so as to justify the seizure here under review, since we would thus be allowing this narrow exception to the warrant requirement to swallow the rule. Although Detective Tell, at the time of the search, harbored a generalized suspicion that the Oldsmobile body parts were stolen, his own testimony at the hearing on the motion to suppress indicated that upon mere inspection of these seemingly innocuous items it was not "immediately apparent" that appellee was in possession of property which Tell knew, or had probable cause to believe, was contraband. We therefore conclude that Detective Tell's seizure of the Oldsmobile parts was inconsistent with the thrust of the plain view doctrine.

This holding is in harmony with the decisions of other courts which have considered the question of whether the incriminating nature of evidence could have been apparent

to the seizing authority upon initial inspection.

In *United States* v. *Clark* (C. A. 8, 1976), 531 F. 2d 928, an appeal was taken from a trial court's order granting Clark's motion to suppress the introduction in evidence of a semiautomatic pistol. The seizure of the pistol occurred after Clark's motorcycle repair shop and attached residence had twice been searched, first by state authorities and then by federal agents. The first search was conducted pursuant to a warrant issued for controlled substances. During this search the investigating officers discovered the pistol in Clark's possession and recorded the serial number of the firearm. The weapon was subsequently traced, revealing several possible violations of federal firearms statutes. A second warrant was then issued, particularly describing the semiautomatic pistol, and as a consequence of a second search the pistol was seized. In affirming the suppression of this evidence, the appellate court refused to apply the plain view doctrine. The court based its decision on the fact that the incriminating nature of the pistol was not immediately apparent at the time of the initial search, and that therefore, because of its exploratory nature, the first search was unreasonable and violative of the Fourth Amendment. Accord, *United States* v. *Gray* (C. A. 6, 1973), 484 F. 2d 352.

In *People* v. *LaRocco* (1972), 178 Colo. 196, 496 P. 2d 314, the state appealed the granting of defendant's motion to suppress evidence. During a search conducted pursuant to a warrant describing various tools, guns, ammunition and identity papers, an allegedly forged Illinois driver's license and a blank Illinois driver's license form were also seized. LaRocco was later charged with the crime of forgery. In refusing to uphold the seizure under the plain view doctrine the Supreme Court of Colorado reasoned, at page 199, that "* * * here, the license was merely suspected of being fictitious and a forged document at the time it was seized. Rather than contraband, a more accurate characterization would be that it constituted evidence of criminal activity yet to be proved, as is demonstrated by the filing

of the criminal charge of forgery three months later."

In *People* v. *Murray* (Ct. App. 1978), 143 Cal. Rptr. 502, the defendant appealed his conviction for receiving stolen property. In the course of executing a search warrant police officers had entered a storage room adjacent to the office of Murray's motel. There they seized two television sets, not specifically described in the warrant, which were later proven to have been stolen. In reversing the judgment of conviction the appellate court commented, at page 505, as follows:

"* * * The two television sets upon which counts one and two were predicated were not inherently identifiable as contraband nor were they identified at the scene as having obliterated serial numbers or other distinctive markings to set them apart from any other * * * sets of the same make and model. It follows therefore that the seizure was not justified under the plain view doctrine and evidence thereof should have been suppressed."

For additional case authority wherein appellate courts have similarly refused to uphold seizures under the plain view exception to the warrant requirement see *Shipman* v. *State* (1973), 291 Ala. 484, 282 So. 2d 700 (seizure of cellophane bags containing powder); *Cook* v. *State* (1975), 134 Ga. App. 712, 215 S. E. 2d 728 (seizure of coin collection); *State* v. *Keefe* (1975), 13 Wash. App. 829, 537 P. 2d 795 (seizure of type samples from a typewriter); *United States* v. *Berenguer* (C. A. 2, 1977), 562 F. 2d 206 (seizure of wallet). See, also, concurring opinion of Mr. Justice Stewart in *Stanley* v. *Georgia* (1969), 394 U. S. 557, 569 (seizure of motion picture films); dissenting opinion of Mr. Justice Douglas in *Sedillo* v. *United States* (1974), 419 U. S. 947 (seizure of an envelope).

It is the considered judgment of this court that, at the time of the seizure, the incriminating nature of the Oldsmobile body parts was not immediately apparent to Detective Tell. Accordingly, the seizure of this evidence cannot be justified by reliance upon the plain view doctrine.

The judgment of the Court of Appeals, affirming the

allowance of appellee's motion to suppress, is hereby affirmed.

*Judgment affirmed.*

O'Neill, C. J., W. Brown and Sweeney, JJ., concur.

Herbert and Locher, JJ., concur in paragraph two of the syllabus.

P. Brown, J., dissents.