THE STATE OF OHIO v. MIRLISENA.

(No. 84-CR-5087—Decided
May 31, 1984.)

Court of Common Pleas of
Clermont County.

*Richard Ferenc,* assistant pros-
ecuting attorney, for plaintiff.
*James Staley,* for defendant.

RINGLAND, J. The defendant,
Joseph Mirlisena, was indicted on two
counts of receiving stolen property in
violation of R.C. 2913.51(A), on April
10, 1984. A motion to suppress all
evidence seized pursuant to the execu-
tion of a search warrant was made for
the reason that the items seized were
not identified in the warrant particularly
and were seized as exceptions to the
"plain view" doctrine.

The pertinent facts are as follows:
On March 5, 1984, a Clermont County
judge issued a search warrant for defen-
dant's residence for two specific items
believed to have been stolen from Ave-
nue Welding Company in Cincinnati,
Ohio: Hougen magnetic drill Model
1068A, serial number 10905; Milwaukee
Magnetic drill Motor Head number
0050512355, serial number 0605983704.

The officers proceeded to defen-
dant's residence thereafter to execute
the search warrant. Upon seeking the
two items specifically listed, the officers
observed, in open view at the premises,
several items, most notably a different
Milwaukee magnetic drill, several
pumps and grinders, a radar detector
and a bug catcher, which they recalled
from their investigation of the Avenue
Welding Company thefts may have been
stolen at the time of the stealing of drills
number 0605983704 and number 10905.
The officers however did not locate the
two specifically listed drills at the
premises. Upon viewing the other items
at the premises in open and plain view
and noticing that many of the items had
the serial numbers removed, and upon
the officer noticing that those items, as
well as items with serial numbers,
matched the general description of prop-
erty reported stolen from the east end of
Cincinnati, the officers quickly ran a
serial number check by phoning their
headquarters and inquiring whether the
serial numbers matched those of items
listed in the police report prepared at
the time of the theft. The serial numbers
matched. The officers advised defendant
of his *Miranda* rights; the defendant ad-
vised them he had obtained the items
from "kids in the East End." Based on

all of the above, officers seized these items. The sole issue presented by the motion to suppress is whether the criminal character of the seized items was "immediately apparent" to the officers so that the items were seized pursuant to the "plain view" exception to the Fourth Amendment requirement of a valid, particularized warrant. Defendant asserts that the Supreme Court of Ohio case of State v. Williams (1978), 55 Ohio St. 2d 82 [9 O.O.3d 81], is controlling. In Williams the high court found that where an officer executing a search warrant seized items not listed on the warrant and where the officer upon initial inspection had no greater than a generalized suspicion of the criminal character of the items, the seizure did not fall within the "plain view" exception to the requirement of a valid warrant. The officer in Williams went to an auto garage to seize items particularly listed, namely a hydraulic jack, a cutting torch and an acetylene tank. While at the premises the officer observed defendant working on a partially assembled vehicle and numerous body parts of the same shade of paint as the vehicle. The officer phoned the auto salvage yard where the defendant stated in response to the officers' inquiries that he had purchased the cars. The yard indicated that the cars were in a stripped condition when sold to defendant. The officer then seized the parts. Thereafter, the officer, after a lengthy investigation, discovered the parts to have been stolen.

The court found that the facts did not support a finding that the criminal character of the body parts was "immediately apparent" to the officer upon his initial inspection of the items. The court stated:

"Quite to the contrary, the record discloses that it was necessary for * * * [the officer] to inquire as to where the two vehicles were purchased, and to place a telephone call to the auto salvage yard, before he became suspicious that the unattached body parts may have been stolen. Moreover, it was not until he had seized the parts, and thereafter conducted a two-month-long investigation, that [the officer] knew for certain that some of the auto parts in * * * [defendant's] possession had been stolen." Id. at 85-86. The court found that the officer harbored no more than a generalized suspicion at the inception and that the incriminating nature of the parts cannot be said to have been immediately apparent to the officer.

As applied to the instant case, the court finds the Williams case to be distinguishable and inapposite, in that the officers in the instant case were possessed of a well-founded and reasonable suspicion, more than a merely generalized suspicion, of the criminal character of the items upon the initial inspection.

Immediately upon viewing the several items at defendant's residence, the officers herein formed a particularized and reasonable suspicion that these items had also been stolen as they recalled that other items not listed in the search warrant were in fact stolen; many of the items had the serial numbers removed, others matched the description of stolen items. To confirm their suspicions they ran a serial number check from the premises and learned immediately that the items were stolen as well. In Williams, on the other hand, the officer lacked a well-founded suspicion upon his initial inspection and had to conduct further investigation even at the scene (i.e., inquiries and phone calls to third parties not involved in the matter) in order to reach but a generalized suspicion.

One commentator in discussing the "immediately apparent" requirement stated that the standard is met "only if the officers recognize * * * [the items] probably to be related to the criminal activity forming the basis for issuance of the warrant, or to criminal activity of

which the officers were aware before the warrant was executed." 1 Ringel, Searches & Seizures, Arrests and Confessions (1984) 6-28, Section 6.5(a)(1) and cases therein cited. The commentator further opined that most courts have taken the view that the checking of serial numbers on objects does not destroy their criminal quality as being "immediately apparent," so long as the officer has some reasonable basis to believe that the objects may have been stolen. *Id.* at 6-35 and cases cited at fn. 99. The commentator noted that *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443, approves of the recording of serial numbers when it is believed that the property may be stolen, but that random recording of serial numbers without reasonable suspicion that property is stolen amounts to an exploratory search in violation of the warrant requirement. The court would note in reference to the above that the officers in the instant matter recognized that the items were probably related to the criminal activity forming the basis of the warrant, the welding company thefts, and this criminal activity was known to them prior to the execution of the warrant.

The court finds this case to be substantially similar to *State* v. *Streitz* (Minn. 1977), 258 N.W. 2d 768, and *Klenke* v. *State* (Alaska 1978), 581 P.2d 1119. In *Streitz,* the court held that where defendant was believed to be involved in several burglaries and where police entertained a reasonable belief that objects were stolen articles upon initial viewing, the tracing of serial numbers by telephoning the state and federal crime information centers from the scene of the execution of the warrant did not belie the assertion that the incriminating nature of the property was immediately apparent. In *Klenke,* the court determined that officers who in executing a search warrant viewed many articles matching descriptions of items recently stolen in several bur-

glaries in which defendant was a suspect, had probable cause to believe the various articles were stolen and thus could seize the items under the "plain view" exception. The court held that the tracing of serial numbers by computer check did not undercut the fact that the incriminating nature of the items was immediately apparent to the officers.

The statement which best summarizes the proper standard for "immediately apparent" in this court's estimation is found in *United States* v. *Truitt* (C.A. 6, 1975), 521 F.2d 1174, 1177, where the court, in assessing whether the criminal character of a sawed-off shotgun is "immediately apparent" to officers executing a search warrant not listing that particular gun stated:

"The inquiry, we think, therefore, is not primarily whether the object is contraband, but whether its discovery under the circumstances would warrant a police officer of reasonable caution in believing that an offense has been or is being committed and that the object is evidence incriminating the accused."

The officers in the instant matter, under the circumstances, reasonably believed that the offense of "receiving stolen property" had been committed by defendant upon initial discovery of the several items seized and perceived reasonably the items to be incriminating evidence. That the officers thereafter ran a serial number check or check of the list of stolen property, does not change their immediate, first impression that the items were stolen from the welding company by defendant.

The motion to suppress is not well-taken and is overruled, the criminal character of the items having been immediately apparent to the officers upon their discovery at the premises.

Defendant has additionally submitted a motion for the return of the various items to his possession. The motion is not well-taken and is overruled,

given that the evidentiary utility of the property is not exhausted in this matter and that the items may be stolen property. See *United States* v. *Proca* (N.D. Cal. 1982), 535 F. Supp. 1343, and *Ringel, supra,* at 20-32, Section 20.9.

*Motions to suppress and for return overruled.*