JOURNAL ENTRY and OPINION
The defendant-appellant herein, Arthur Little, appeals from his conviction of one count of Possession of Drugs, a violation of R.C. 2925.11
For the reasons adduced below, we affirm the verdict of the trial court.
On January 28, 1999, two Cleveland police officers were summoned to the Longwood Estates housing project by a private, unarmed security guard who was patrolling the premises. The security officer notified the police officers of the presence of three individuals in a parked car, two of whom had threatened the officer while at the housing project the prior evening when he instructed them that they were not authorized to park at the site. The security officer also provided a description of the vehicle in question, a description of the perpetrators and the license plate number of the vehicle.
When the two officers arrived on the scene, approximately two and one-half minutes after being called, they observed the subject vehicle, a white Camaro, which was parked and contained three males fitting the description provided by the security officer. The police officers confirmed that the vehicle's license plate number was the same as that which had been reported by the security officer. At this point the officers exited their cruiser[1] and approached the white Camaro and ordered the occupants of the vehicle to show their hands. As the officers proceeded to cover the short distance between their cruiser and the parked car, they noticed a large cloud of white powder in the back seat of the Camaro. The officers had earlier noticed furtive movements from within the car and one of the officers also noticed a plastic bag in the back seat. The officers concluded that the occupants of the vehicle were attempting to conceal a large amount of cocaine and in so doing had spilled the substance in the back seat of the car. At this juncture the officers ordered the occupants out of the vehicle.
The driver of the vehicle gave his consent for the officers to search the car's interior. A search of the vehicle revealed a plastic bag containing cocaine partially wedged between the back seats. The police officers also observed a white streak on the face of the back seat occupant after he had been ordered out of the car. Each of the three were placed under arrest for suspected possession of drugs. Subsequently performed scientific testing of the substance in the plastic bag confirmed that it was indeed cocaine.
The appellant was indicted on July 15, 1998. The indictment contained three counts. The first count charged the appellant with Preparation of Drugs for Sale in violation of R.C. 2925.07, with a Schoolyard Specification as provided by R.C. 2925.03(C)(2)(b). The second count charged the appellant with Possession of Drugs under R.C. 2925.11. Finally, the third count charged the appellant with Possessing Criminal Tools in violation of R.C. 2923.24
A jury trial commenced on September 30, 1999. The appellant was tried simultaneously with co-defendant Demetrius Long who was the driver of the white Camaro.[2] On October 4, 1999, the jury returned a verdict finding the appellant guilty on count two, but not guilty on count one. Count three was dismissed by the trial court as to the appellant only at the request of the state at the close of the state's case. The trial court sentenced the appellant to one year imprisonment at the Lorain Correctional Institution. The appellant timely filed the within appeal challenging the verdict, as well as an evidentiary ruling made by the trial court.
The appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
The appellant's motion to suppress challenged the legality of the arresting officers' initial stop of the appellant.[3]
In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. State v. Mills (1992), 62 Ohio St.3d 357; State v. McCulley (Apr. 28, 1994), Cuyahoga App. No. 64470, unreported. The trial court assumes the role of trier of fact in a suppression hearing and is, therefore, in the best position to resolve questions of fact and evaluate credibility of witnesses. State v. Klein (1991), 73 Ohio App.3d 486 . Appellate courts should give great deference to the judgment of the trier of fact. State v. George (1989),45 Ohio St.3d 325. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Klein, supra.
The Fourth Amendment to the United States Constitution provides in part: the right of the people to secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *. The Fourth Amendment to the United States Constitution and Section 14, Article One of the Ohio Constitution requires the police to obtain a warrant based upon probable cause before they conduct a search. However, the warrant requirement is subject to a number of well-established exceptions. Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022.
In Terry v. Ohio (1968), 392 U.S. 1, 20 L.E.2d 889, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity. The Supreme Court stated:
 * * * We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
Id. at 330.
It should be noted that the level of suspicion required for a Terry stop is less demanding than that required to establish probable cause. United States v. Montoya de Hernandez (1985), 473 U.S. 531,105 S.Ct. 3304, 87 L.Ed.2d 381. Probable cause has been defined as a fair probability that contraband or evidence of a crime will be found. Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317,76 L.Ed.2d 527.
In order to justify an investigative stop under Terry, supra, a police officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Id. at 27. The Fourth Amendment requires a minimal level of objective justificationfor making the stop. INS v. Delgado (1984), 466 U.S. 210, 217, 104 S.Ct. 1758, 1763,80 L.Ed.2d 247.
The United States Supreme Court has held since an effort to define reasonable and/or articulable suspicion creates unnecessary difficulty, that when evaluating the validity of a stop such as this, a court must consider the totality of the circumstances — the whole picture. United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695,66 L.Ed.2d 261. As the United States Supreme Court stated in Illinois v. Gates, supra, at 231, 232:
 The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; * * *. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
In considering the totality of the circumstances, courts must also give due deference to the police officer's training and experience. The totality of the circumstances must be viewed through the eyes of a reasonably prudent police officer at the scene, who must react to sometimes life-threatening events as they unfold. State v. Freeman (1980), 64 Ohio St.2d 291.
In the instant case, the arresting officers were called to the scene by a security officer who had allegedly been threatened by the appellant and a companion. The security officer testified that he specifically took notice of the appellant at the time that he was threatened. The security officer had reported the alleged threat on the day after it occurred at which time he was instructed to notify the two arresting officers if he came across the same individuals again. Soon thereafter the security guard viewed the same two individuals, as well as a third person, in the same vehicle and promptly notified the two arresting officers. These two officers thus had more than sufficient reason to believe that the occupants of the car were the same persons who had been involved in the previous evening's incident and thus had an objectively reasonable suspicion upon which to base their investigatory stop of the appellant's vehicle.
Additionally, the officers testified that the driver of the Camaro, co-defendant Long, consented to the search of his vehicle. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to voluntary consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219,36 L.Ed.2d 854, 93 S.Ct. 2041. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "clear and positive" evidence that the consent was "freely and voluntarily" given. State v. Posey (1988),40 Ohio St.3d 420, 427; State v. Danby (1983), 11 Ohio App.3d 38; State v. Davis (1992), 80 Ohio App.3d 277.
The investigatory stop in this case was of very short duration. As the arresting officers exited their vehicles and approached the subject vehicle, they almost immediately observed a large cloud of white powder in the back seat of the car, as well as a large plastic bag. The officers reasonably concluded, based on their training and experience, that this white, powdery substance was more likely than not cocaine. Once the officers personally observed the presence of cocaine, they then had probable cause to effect an arrest under the plain view doctrine. This court recently summarized the plain view doctrine in State v. Kimmie (July 2, 1998), Cuyahoga App. No. 72904, unreported, as follows:
 * * * It has long been the rule that where an initial intrusion by police officers is lawful, an incriminating object that comes into plain view during that intrusion may be seized without a warrant. State v. Williams (1978), 55 Ohio St.2d 82, 377 N.E.2d 1013.
 Whether an object is in "plain view" is determined by the following analysis:
 In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities.
Id. at syllabus 1.
The Ohio Supreme Court defined the last requirement of the plain view doctrine in the syllabus of State v. Halczyszak (1986), 25 Ohio St.3d 301,496 N.E.2d 925, as follows:
 The "immediately apparent" requirement of the "plain view" doctrine is satisfied when police have probable cause to associate an object with criminal activity.
 On ascertaining the required probable cause to satisfy the "immediately apparent" requirement, police officers may rely on their specialized knowledge, training and experience.
The record in this case established that not only was the search of the vehicle justified by the owner's consent to the same, but that the officers would also have been justified in conducting a search of the vehicle without such express consent as the incriminating nature of the spilled cocaine in the back seat of the white Camaro was immediately apparent to the officers when they observed the large cloud of white powder.
The appellant also objects in this assignment of error to the trial court's failure to issue written findings of fact when it denied the appellant's motion. The appellant neglects to mention that there was never any request made by his trial counsel for written findings of fact.
Criminal Rule 12(E) provides, in relevant part, that "where factual issues are involved in determining a motion, the court shall state it's essential findings on the record." "A trial court must, upon the defendant's request, state essential findings of fact in support of its denial of a motion to discharge for failure to comply with the speedy trial provisions of R.C. 2945.71." (Emphasis added.) State v. Brown (1992), 64 Ohio St.3d 476, 481, 597 N.E.2d 97, citing Bryan v. Knapp (1986), 21 Ohio St.3d 64, 65, 488 N.E.2d 142. In order for a court to have a duty to issue findings of fact, there must be a request from the defendant. Id. The record being devoid of any such request on the part of the appellant in the instant case, the trial court had no duty to issue findings of facts. Therefore, this assignment of error is overruled.
The appellant's second assignment of error states:
 II. THE DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS, HE HAS BEEN DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND OHIO.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
In the present case there was ample evidence upon which the jury could base its verdict. One of the arresting officers stated that as he and his partner approached the car, he observed constant activity and that he also noted that the two front seat passengers kept turning around towards the back seat, despite being ordered to show their hands by the arresting officers. The officer specifically stated that he observed the appellant in the front passenger seat repeatedly turn towards the rear of the car as if he was placing something in the back seat. The officer also testified that the appellant failed to comply with his order to show his hands, but, rather, continued on with his activity within the car. The appellant admitted to initially ducking his hands down when told to show his hands by the police officers.
The appellant's alibi that he and co-defendant Long were dropping off window blinds to a tenant of the housing project failed to account for his presence in the area the prior evening or his menacing behavior towards the security guard. According to the appellant, an abled body twenty-one-year-old male, his employment history in the four years leading up to his trial consisted of applying for a job at the Wyndham Hotel on one occasion and helping my uncle fix his house and a few other houses.
The fact that Marshall Crumb, the back seat passenger, testified that the confiscated cocaine belonged to him and that the appellant and the co-defendant did not know of its existence does not make the appellant's conviction invalid as being against the manifest weight of the evidence. The jury was free to believe some, all or none of Mr. Crumb's testimony. Crumb specifically contradicted the arresting officers' testimony in his description of the location of the plastic bag containing cocaine in the Camaro, his insistence that the bag was knotted at the time that the police recovered it and his denial that the cocaine was spilled or that he had a white streak on his face. Additionally, the state produced a veteran narcotics detective who testified that Crumb's story that he purchased the cocaine on the street from a person he did not know was not credible because such street level cocaine transactions simply do not take place as the cocaine would have a far greater value if it was made into individual rocks of crack cocaine. The detective also testified that there would be no way to confirm the purity of powdered form cocaine purchased from an unknown street hustler. Crumb also testified that he placed a call from Belmont Correctional Institution to co-defendant Long and that while the three were in City Jail he told the other two that he would take the blame for the incident. Thus, Crumb's veracity as a witness was called into question on at least several occasions.
The officers' testimony was corroborated in all relevant aspects by the testimony of the private security guard who had been previously threatened by the appellant and the co-defendant and who witnessed the entire investigatory stop and arrest. The security guard also confirmed that it had been the appellant and co-defendant Long, but not Crumb, who had made the initial threats against him. The appellant's repeated assertion that the officers based their initial investigatory stop of the appellant on a vague description is simply not supported by the record and by the testimony of the security guard.
The testimony of the arresting officers as to the suspicious movements and other behavior of the appellant provided competent and credible evidence as to all of the essential elements of the case. Thus, the verdict was not against the manifest weight of the evidence. Accordingly, this assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________ MICHAEL J. CORRIGAN JUDGE
PATTON, P.J., CONCURS. BLACKMON, J., CONCURS IN JUDGMENT ONLY.
[1] The two Cleveland police officers were, at the time of the arrest, working a private duty assignment for a private security company, CQAT, which had been retained to patrol and provide security at the Longwood housing project. The vehicle which the officers were driving was a former police cruiser which had been remarked with the CQAT logo.
[2] Co-defendant Long has filed a separate appeal from the verdict of the jury. See Case No. 77272. The third occupant of the vehicle, Marshall Crumb, accepted an offer to plea prior to trial.
[3] The appellant herein did not timely file a motion to suppress prior to trial as required by Crim.R. 12(B)(3), but, rather, was allowed to join in the motion to suppress filed by co-defendant Long on the day of the trial.