JOURNAL ENTRY AND OPINION
Defendant-appellant, Charles Williams, appeals the judgment of the Cuyahoga County Court of Common Pleas denying his motion to suppress evidence of drugs discovered in his car following a stop by police officers for suspicious activity. Appellant contends that the officers did not have a reasonable suspicion that he was engaged in criminal activity and, therefore, had no justification for stopping his vehicle. Appellant also contends that the search of his car subsequent to the stop was illegal because there was no indication that he was armed or dangerous and, therefore, the officers had no reason to search his car.
Appellant was indicted on February 15, 2000 on one count of possession of drugs in the amount of one gram or less, in violation of R.C.2925.11. Appellant pled not guilty to the charge and on April 13, 2000, filed a motion to suppress. On July 18, 2000, the trial court held a hearing regarding appellant's motion.
Cleveland Police Officer George Kwan testified for the state. Kwan testified that he had been a police officer for nearly six years and had made numerous drug arrests in the area of East 102 and Mount Auburn in Cleveland. Kwan testified that in the typical drug transaction in this area, a drug dealer motions to cars traveling east or westbound on Mount Auburn to make the occupants of the cars aware that the dealer has drugs for sale. The eastbound cars pull over and park in a designated parking area of the street; the westbound cars turn around in a driveway, drive back down the street and then park in the parking area. According to Kwan, the drug dealer then approaches the parked cars to make a transaction with the occupants of the cars.
Kwan testified that at approximately 1:00 a.m. on September 28, 1999, he and his partner were parked in a marked zone car on Manor Avenue, one street south of Mount Auburn. Patrolmen John Cole and Carlos Robles were in another zone car, parked approximately five-hundred to seven-hundred-fifty feet away from the area on Mount Auburn where the drug activity usually takes place. A third zone car was also parked in the vicinity.
According to Kwan, Cole and Robles — in the spotter car — were using binoculars of eight to ten power to observe the drug activity. Kwan testified that binoculars of ten power, at five hundred feet, make it appear that a person is only fifty feet away from what he or she is observing. Kwan also testified that, in an effort to curb the drug activity, the City of Cleveland had installed many street lights around the area where the drug activity takes place and, therefore, the area was well-lit.
Kwan testified that Patrolmen Robles and Cole radioed the officers in the other two cars that they had observed a drug transaction between the occupants of a van and an individual who had run up to the van as it was parked in the parking area on Mount Auburn. The police officers in the third zone car stopped the van and subsequently radioed Kwan, Robles and Cole that they had recovered drugs from the van.
Approximately five minutes later, Cole and Robles radioed that a brown Lincoln Continental had pulled into the parking area on Mount Auburn and had been involved in a transaction with the same individual who had earlier approached the van. Kwan and his partner subsequently stopped the Lincoln Continental. Kwan testified:
 After we made the stop, we noted that there was a male driver and a female passenger. We had the male step out for our safety. We already were notified that this was a felony-type of stop. There were drugs involved, and when any type of drugs is involved, we automatically assume there might be a weapon involved because of our training. So we took the driver out for our safety and conducted a pat-down, and placed him in the zone car for protection and for further investigation.
Kwan testified that he and his partner then looked through the window of appellant's car and observed a small rock of crack cocaine on the floor, approximately two or three inches from the driver's seat. Kwan then arrested appellant for possession of drugs.
On cross-examination, Kwan admitted that he did not find any drugs or weapon on appellant when he patted him down.
Appellant subpoenaed Officers Robles and Bragg to testify at the suppression hearing. On cross-examination by defense counsel, Robles testified that at approximately 1:00 a.m. on September 28, 1999, he and Cole were in a zone car on Mount Auburn, watching the area around the intersection of East 102 and Mount Auburn for drug activity. Robles testified that he saw a brown Lincoln Continental turn onto Mount Auburn and travel westbound for a short distance, then pull into a driveway, turn around, come back down the street and stop right in front of where Robles had seen the prior drug transaction.
Robles testified that when the car stopped, we saw the same male that we had seen selling narcotics to * * * the van before that, run out to the car, on the passenger's side of the vehicle, and the male talked for a few minutes, and then made some sort of a transaction to the passenger, then ran away from the vehicle, and then the vehicle pulled away again. Robles admitted, however, that he did not actually see anything change hands.
Robles testified that the Lincoln drove to the corner of East 102 and Mount Auburn and then turned northbound on East 102. Robles then radioed information about the car and its direction to Kwan and his partner.
On direct examination, Robles testified that when he and Cole initially drove up and watched the area for a few minutes, they observed a male standing on Mount Auburn yelling at passing cars. Robles described this as a tactic used by drug dealers to get their attention and sell their wares. Robles and Cole also saw the same man run up to several of the cars he had flagged. They then called for backup and set up the surveillance.
Robles described the transaction between this male and the passenger in the brown Lincoln Continental:
 What I actually saw, when he pulled over, the male ran up to the car, and the same male that was flagging cars, ran up to the car, and leaned into the auto, and was talking for a few minutes, and I seen (sic) the arm go in and the arm came out, and then he backed off and ran back into the yard. Then the car took off.
Robles testified that he had made over five-hundred drug arrests in this type of operation. He also testified that there is consistent drug activity in the area of East 102 and Mount Auburn.
Cleveland Police Officer Renee Bragg testified that she was called to the area of East 102 and Mount Auburn on September 28, 1999 to pat down the female passenger in the Lincoln Continental. According to Bragg, the female was dressed in a thin sundress. Bragg testified that although she did not find any weapons on the female, she found a rock of crack cocaine on her.
The trial court denied appellant's motion to suppress and appellant entered a plea of no contest to the indictment. The trial court found appellant guilty and sentenced him to four years of community control on the conditions that he be supervised by and follow all recommendations of TASC, perform one-hundred-fifty hours of community service and pay court costs.
Appellant timely appealed, raising one assignment of error for our review:
 I. THE TRIAL COURT ERRED BY FAILING [TO] GRANT THE APPELLANT'S MOTION TO SUPPRESS THE STOP AND WARRANTLESS SEARCH OF APPELLANT'S VEHICLE.
Our standard of review of a trial court's judgment regarding a motion to suppress was set forth by this court in State v. Curry (1994),95 Ohio App.3d 93, as follows:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627.
The Fourth Amendment to the United States Constitution provides in part: the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require the police to obtain a warrant based upon probable cause before they conduct a search. The warrant requirement, however, is subject to a number of well-established exceptions. Coolidge v. New Hampshire (1971),403 U.S. 443.
In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. State v. Andrews (1991), 57 Ohio St.3d 87, quoting Terry, supra at 21.
Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams (1990),51 Ohio St.3d 58, 60. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. Andrews, supra at 87-88.
Appellant contends that Kwan and his partner did not have a reasonable suspicion that he was engaged in criminal activity and, therefore, the investigatory stop of his vehicle was invalid. We disagree.
The evidence adduced at the suppression hearing established that Officers Kwan and Robles had extensive experience with the drug activity in the area of East 102 and Mount Auburn and had made hundreds of arrests for drug-related activity in the area. Furthermore, Officer Kwan's description of the "typical" drug transaction that occurs in the area matched exactly what Officers Cole and Robles observed in this case: appellant drove down Mount Auburn past the male who was flagging down cars, turned around, came back down the street and parked. The male then came up to appellant's car, leaned into the car, put his arm in the car, took his arm out and then backed off and ran away while appellant drove away. The officers had only a few minutes earlier observed this same male conduct a similar transaction with the occupants of a van in which the police had found drugs. The lighting in the area was good and the officers were using powerful binoculars. On this evidence, Officer Kwan and his partner had more than sufficient reason to believe that appellant was involved in illegal drug activity and thus had an objectively reasonable suspicion supported by specific and articulable facts upon which to base their investigatory stop of his vehicle.
Appellant also challenges the search of his vehicle, asserting that because there was no evidence that he was armed or dangerous, the officers were not justified in conducting a protective search of his vehicle. Appellant's argument is without merit.
It has long been the rule that where an initial intrusion by police officers is lawful, an incriminating object that comes into plain view during that intrusion may be seized without a warrant. State v. Williams (1978), 55 Ohio St.2d 82. In order to qualify under the plain view exception, it must be shown that 1) the initial intrusion which afforded the authorities the plain view was lawful; 2) the discovery of the evidence was inadvertent; and 3) the incriminating nature of the evidence was immediately apparent to the seizing authorities. Id. at paragraph one of the syllabus.
We have already determined that the initial investigatory stop of appellant's vehicle was a lawful intrusion. Accordingly, the first requirement of the three-prong test was met. The second requirement, an inadvertent discovery, was also satisfied. After appellant was removed from his car, Officer Kwan looked through the window of the car and saw the rock of crack cocaine on the floor of the car. Finally, the incriminating nature of the cocaine was immediately apparent to the officers. Accordingly, the immediate seizure of the cocaine from appellant's car was justified pursuant to the plain view doctrine.
Appellant's assignment of error is therefore overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. and JAMES J. SWEENEY, J., CONCUR.