JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, James D. Rice, appeals the decision of the Cuyahoga County Common Pleas Court denying his motion to suppress evidence obtained during a warrantless search of an automobile in which he was a passenger. For the reasons that follow, we affirm.
 {¶ 2} During the evening of July 6, 2001, Cleveland Police detective Jeffrey Follmer received information from an informant that two males would be going to Christie's Cabaret and that both possessed the drugs ecstasy and cocaine. The detective instructed the informant to accompany the males, one of whom was identified as appellant, and observe the drugs the pair had on them. Following Christie's, the group was to proceed to the Circus on the east bank of the Flats. Detective Follmer positioned a surveillance team near Christie's as well as a "take-down" unit at a point further away. Upon leaving Christie's, the informant again communicated with Detective Follmer. He relayed that the pair possessed at least 15 to 25 pills as well as some cocaine and that they all were enroute to the Circus, with the informant in one car and appellant and his companion in another. He gave a detailed description of the vehicle they were driving, including a license plate number. Detective Michael Demchak was positioned closest to Christie's and, upon observing this vehicle, began to follow it. Detective Follmer and his partner, Detective Cudo, followed Detective Demchak's vehicle. The plan was to apprehend the vehicle at the "take-down" point positioned further away. None of the officers involved in this case themselves observed any of the drugs or any drug-related activity apart from the informant's tip.
 {¶ 3} While following the vehicle, Detective Demchak observed the vehicle proceed through a stop sign without stopping. He radioed this information to Detective Follmer, who had similarly observed the traffic violation. Sometime thereafter, Detective Demchak turned off, leaving Detectives Follmer and Cudo following the vehicle. Appellant and his companion were eventually apprehended by these officers in the early morning hours of July 7, 2001.
 {¶ 4} As the officers were approaching the vehicle, Detective Follmer observed the driver of the vehicle, identified as Ryan Banyas, making furtive movements in the direction of the center console while appellant was observed reaching underneath the passenger seat. Detective Follmer also sensed an odor of marijuana emanating from the vehicle. Once the pair was out of the vehicle, the officers who were part of the "take-down" unit, Detectives Bienvinido Santiago and his partner, Detective Shoulders, approached the vehicle. Detective Santiago testified that he likewise smelled marijuana and upon looking inside observed a burnt marijuana cigarette in the ashtray. His partner, Detective Shoulders, found a bag containing approximately 15 pills, later identified as ecstasy, in the center console.
 {¶ 5} Appellant was eventually indicted for two counts of preparation of drugs for sale, in violation of R.C. 2925.03; two counts of possession of drugs, in violation of R.C. 2925.11; and one count of possession of criminal tools, in violation of R.C. 2923.24. In the motion to suppress that followed, appellant sought to suppress the seizure of the drugs on the basis that the initial stop of the vehicle was unjustified. The court eventually denied the motion on the authority ofState v. Welch (1985), 18 Ohio St.3d 88. Appellant thereafter entered a no contest plea to all counts and was subsequently found guilty of possession of drugs and possession of criminal-tools. One count of the preparation-of-drugs-for-sale charge was dismissed while the trial court found appellant not guilty of the other. He was ultimately sentenced to a six-month term of imprisonment, which was stayed pending appeal.
 {¶ 6} Appellant is now before this court and assigns two errors for our review. Since both assignments of error challenge the trial court's decision denying the motion to suppress, they will be discussed together.
 {¶ 7} A motion to suppress evidence seeks to challenge the arrest, search or seizure as somehow being in violation of theFourth Amendment of the United States Constitution. The principal remedy for such a violation is the exclusion of evidence from the criminal trial of the individual whose rights have been violated. See Katz, Ohio Arrest, Search and Seizure (2001) 31, Section 2.1. Exclusion is mandatory underMapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, when such evidence is obtained as a result of an illegal arrest, search or seizure. In reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings of fact "if they are supported by competent, credible evidence." State v. Retherford (1994),93 Ohio App.3d 586, 592. Accepting these facts as true, we must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether these facts meet the applicable legal standard. Id.
 {¶ 8} In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889, 44 Ohio Op.2d 383, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause to arrest where the officer reasonably suspects that the individual is or has been involved in criminal activity. In reaching that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v.Andrews (1991), 57 Ohio St.3d 86, quoting State v. Terry,392 U.S. at 21.
 {¶ 9} Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams
(1990), 51 Ohio St.3d 58, 60. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. State v. Andrews, 57 Ohio St.3d at 87-88.
 {¶ 10} Where law enforcement officers rely solely upon an informant's tip before effectuating a stop, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. Maumee v. Weisner (1999), 87 Ohio St.3d 295,298-299. It must be determined whether the tip itself is sufficiently reliable in order to justify the investigative stop. Factors to be considered are the informant's veracity, reliability and basis of knowledge. Id.
 {¶ 11} In this regard, courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. Maumee v.Weisner, 87 Ohio St.3d at 300. Nonetheless, because the "reasonable suspicion" needed to initiate a Terry stop is a less demanding standard than probable cause, reasonable suspicion "can arise from information that is less reliable than that required to show probable cause." Alabamav. White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416,110 L.Ed.2d 301, 309. Thus, a tip from a less reliable informant can provide a sufficient basis for a Terry stop if the tip can be corroborated by independent police investigation. Id. at 329; see, also, State v. Welch,18 Ohio St.3d at 91.
 {¶ 12} While the informant in this case was variously referred to as confidential and reliable, his reliability was questioned and his identity was not confidential as the informant's identity was known to all involved. Succinctly, the informant had recently been convicted of a drug-related offense and was awaiting sentencing at the time of the offenses at issue in this case thereby placing him in the known informant category. Indeed, appellant testified at the suppression hearing that he and his companion were going "partying" with the informant because he was soon leaving for prison. As to his reliability, Detective Follmer testified that this informant had provided information leading to the arrest of at least five people. Upon the court's inquiry, none of those arrested thus far had been acquitted and at least two were soon entering pleas.[1]
 {¶ 13} Even if we were to find this informant unreliable based on the informant's limited history, the initial stop of the vehicle was not based solely on this informant's tip. To be sure, the officers testified that they were prepared to stop appellant's vehicle based on this tip even in the absence of the ensuing traffic violation. Be that as it may, appellant was occupying a vehicle that did violate a traffic ordinance for which a citation was issued. Thus, we cannot say that the initial stop was unlawful under Terry even in the absence the informant's tip. Appellant asks us to find the traffic stop itself a "farce and a sham," solely for the protection of the informant. There is nothing in the record to support appellant's allegation in this regard. Appellant's companion ran the stop sign without any participation on the part of the officers involved in the investigation or that of the informant.
 {¶ 14} Having found the initial stop lawful because it was incident to a traffic violation, we next analyze the appropriateness of the search of the vehicle and subsequent recovery of the drugs contained therein.
 {¶ 15} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution protect individuals from unreasonable government intrusions into areas where there is a legitimate expectation of privacy. Katz v. United States (1967), 389 U.S. 347,88 S.Ct. 507, 19 L.Ed.2d 576. Searches conducted outside the judicial process are per se unreasonable and subject to only a few specifically established and well-delineated exceptions. Id.; see, also, Coolidge v.New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. One such well-established exception is the warrantless search of an automobile. Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280,69 L.Ed. 543; see, also, State v. Welch, 18 Ohio St.3d at 91-92. This exception is premised on the general policy that citizens have a lesser expectation of privacy in their vehicles than in a private dwelling and possess "no degree of privacy when carrying contraband in such vehicles." Id. Consequently, where there is probable cause to search an entire vehicle, law enforcement officers may conduct a warrantless search of every part of that vehicle, including its contents. Id. at the syllabus. Probable cause is established when there is "a reasonable ground for belief of guilt." Carroll v. United States, 267 U.S. at 161. Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate. State v. Welch, 18 Ohio St.3d at 92.
 {¶ 16} It is equally well established that an incriminating object that comes into plain view during a lawful intrusion may be seized without a warrant. In other words, the plain view exception to theFourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. Coolidge v.New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; see, also,State v. Williams (1978), 55 Ohio St.2d 82, paragraph one of the syllabus. Thus, in order for the plain view doctrine to apply to permit a warrantless seizure, the law enforcement officer must not only be located in a place where the officer has a right to be, but the officer must also have lawful right or access to the object in plain view. See Horton v.California (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; see, also, State v. Waddy (1992), 63 Ohio St.3d 424, 442.
 {¶ 17} Recently, the Ohio Supreme Court in State v. Moore (2000),90 Ohio St.3d 47, held that the "smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." Id. at 48. Here, Detectives Santiago and Follmer both testified that they smelled the odor of marijuana upon approaching the vehicle. Appellant urges this court to find that the strength of that smell must somehow determine whether a warrantless search of the vehicle is appropriate. From the tenor of his argument, a search is not justified if the odor is weak in that a weak odor signifies a more distant time that the marijuana was smoked by its occupants, who may or may not be the same occupants detained.
 {¶ 18} It is true that the officers in Moore testified that there was a "strong odor" emanating not only from the vehicle itself but from its occupants as well. Nonetheless, the Moore court did not make the distinction urged by appellant. To the contrary, the Moore court merely stated that the "smell of marijuana," as detected by a person qualified to recognize that odor, is sufficient to establish probable cause. Without more, we are unwilling to say that a less potent odor of marijuana emanating from a vehicle is, therefore, insufficient thereby making any evidence seized as result of a warrantless search of the vehicle subject to suppression. In conclusion, we find that the initial stop in this case was lawful because, at the very least, it was incident to a traffic violation. Upon approaching the vehicle, an odor of marijuana was detected by experienced officers and a marijuana cigarette was observed in plain view, both of which justified the search of the automobile wherein several pills of ecstasy were found. Based on these facts, it cannot be said that the search and seizure of evidence was in violation of appellant's Fourth Amendment rights. Consequently, it was not error for the trial court to deny appellant's motion to suppress.
 {¶ 19} Appellant's assignments of error are not well taken and are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., AND FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] From the tenor of this officer's testimony it is assumed that this reference is to a negotiated plea or plea bargain.