DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Sandusky County Court of Common Pleas, which denied appellant Thomas A. Ricci's motion to suppress. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant was stopped while driving in Fremont, Ohio. It is undisputed that appellant did not commit a driving offense. Instead, the officer stopped appellant to investigate a felonious assault that occurred five weeks earlier. Upon stopping appellant, officers on the scene discovered a baggie of a white powder later determined to be cocaine and a pipe commonly used to smoke cocaine. In this appeal, appellant argues that the police unconstitutionally stopped him because the assault was a completed crime and because less invasive methods existed to investigate it.
 {¶ 3} On August 31, 2001, Fremont Police Officer Kenneth Frost received a call that a woman had been thrown from a vehicle. He went to the scene to investigate and found the woman, later identified as Pam Decker, lying in the road. Witnesses explained to Frost that the victim had either been holding onto or was being held onto the side of a brown van while the van was in motion. Eventually, she was thrown off the van and the van sped away. When Frost interviewed Decker at the hospital, she stated that she knew the van's driver only by his street name (which Frost recalled as being either "Come Up Man" or "Come Down Man"). She explained that she was acquainted with this man, and when she saw him driving the van, she approached it and began to converse with the driver through the open driver's side window. For some unexplained reason, the driver grabbed her arm and began to drive. The driver subsequently threw her from the moving vehicle.
 {¶ 4} On September 28, 2001, in the course of Frost's investigation, he spoke with a man named Ed Caldwell. Caldwell told Frost that appellant was the driver of the van. At some point after the incident, Decker had also indicated to Frost that appellant was the driver. During the course of the investigation, and aided by the information from Caldwell and Decker, Frost was able to obtain a Bellevue, Ohio address for appellant as well as appellant's driver's license number, his social security number, and two possible places of employment. Frost solicited help from the Bellevue Police in locating appellant, but he never made contact with him. Frost also testified that he had previously stopped appellant on an unrelated traffic matter and had given him a warning. From this encounter, Frost had a description of the vehicle appellant would possibly be driving as well as a license plate number. Frost asked other Fremont Police officers to be on the look-out for appellant.
 {¶ 5} On October 8, 2001, Fremont Police Detectives Anthony Emrich and Timothy Woolf spotted appellant driving in Fremont. They radioed this to Frost, who stopped appellant. Upon stopping appellant, Frost and Emrich approached the driver's side door where appellant was located, and Woolf approached the passenger side door to speak with the passenger. Woolf asked the passenger to step out of the vehicle, and when the passenger did so, Woolf spotted a plastic baggie in the console in the middle of the vehicle. He testified that the baggie aroused his suspicion because it was the kind commonly associated with drugs, and when he picked it up, it had a white powder in it which later tested positive for cocaine. Between the console and the driver's seat Woolf subsequently found a pipe that he knew from his training to be commonly used for smoking cocaine. The passenger was released, and appellant was arrested and charged with possession of cocaine and drug paraphernalia.
 {¶ 6} Appellant filed a motion to suppress/motion to dismiss in the trial court, arguing that the stop was constitutionally invalid and that the plain view exception to the warrant requirement was inapplicable in this case. After a hearing, the trial court denied the motion, finding that the baggie containing cocaine was in plain view and holding that the officers had reasonable suspicion to stop the vehicle based on information that appellant was the driver of the van involved in the assault.
 {¶ 7} Appellant now appeals, setting forth the following assignment of error:
 {¶ 8} "The trial court erred to the prejudice of the Appellant/Defendant by denying his Motion to Suppress/Dismiss."
 {¶ 9} Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. State v. Davis
(1999), 133 Ohio App.3d 114, 117. Since a trial court deciding the motion to suppress acts as a factfinder, an appellate court must accept the trial court's findings of fact as true if supported by competent, credible evidence. State v. Kobi
(1997), 122 Ohio App.3d 160, 167-168, discretionary appeal not allowed (1997), 80 Ohio St.3d 1466. However, an appellate court reviews de novo the trial court's application of the law to the facts. Id.
 {¶ 10} The Fourth Amendment to the United States Constitution prohibits unlawful seizures of individuals. However, a police officer may constitutionally effect an investigatory stop of an individual when the officer has reasonable suspicion based on "specific and articulable facts" that the individual is engaging in criminal behavior. State v. Andrews (1991),57 Ohio St.3d 86, 87, writ of certiorari denied (1991), 501 U.S. 1220; Terryv. Ohio (1968), 392 U.S. 1, 21.
 {¶ 11} Terry-type stops are normally used when criminal behavior is presently ongoing. Here, Frost made a Terry stop to investigate a completed felony where there was no criminal activity ongoing at the time of the stop. The United States Supreme Court has addressed the constitutionality of Terry
stops to investigate completed crimes. See United States v.Hensley (1985), 469 U.S. 221. In doing so, the court explained that the test for Terry stops to investigate completed crimes is the same as for ongoing crimes: a balancing test "grounded in the standard of reasonableness." Id. at 228. The test balances "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." The court then noted that the governmental interests in stopping those involved in ongoing crime ("crime prevention and detection") is different than the governmental interests in stopping those involved in completed crimes. The court noted:
 {¶ 12} "A stop to investigate an already completed crime does not necessarily promote the interest of crime prevention as directly as a stop to investigate suspected ongoing criminal activity. Similarly, the exigent circumstances which require a police officer to step in before a crime is committed or completed are not necessarily as pressing long afterwards. Public safety may be less threatened by a suspect in a past crime who now appears to be going about his lawful business than it is by a suspect who is currently in the process of violating the law. Finally, officers making a stop to investigate past crimes may have a wider range of opportunity to choose the time and circumstances of the stop." Id. at 229-230.
 {¶ 13} Even though the governmental interests are different in stopping those involved in current crimes as opposed to those involved in past crimes, the court held that under certain circumstances an investigatory stop may be made to investigate past crimes. According to the court, "where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." Id. at 229.
 {¶ 14} The court stopped short of holding that a Terry stop is warranted in all cases to investigate past crimes. The court held:
 {¶ 15} "It is enough to say that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion." Id.
 {¶ 16} In this case, two individuals identified appellant as the driver of the van involved in what police considered a felonious assault. Frost was actively looking for appellant and even sought help from the Bellevue Police Department in finding him. While Frost had some leads on where appellant worked, he was unable to verify appellant's place of employment. Based on these facts, we find that Frost's Terry stop of appellant was constitutional pursuant to Hensley.
 {¶ 17} Appellant also argues that the cocaine that police recovered from his car was not properly seized under the plain view exception. The Ohio Supreme Court has held that, in order for the plain view exception to apply, the state must show that:
 {¶ 18} "(1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities."State v. Williams (1978), 55 Ohio St.2d 82, paragraph one of the syllabus.
 {¶ 19} In this case, since we have already decided that the stop was constitutional under Hensley, the first requirement for the plain view exception is met. As for the second requirement, Detective Woolf testified that he spotted the baggie as soon as the passenger stepped out of the car; there is no evidence that he was looking for incriminating evidence. Therefore, the discovery of the baggie was inadvertent. Third, Woolf testified that his training and experience told him right away that the baggie appeared to be the type used in the drug trade, and when he picked it up he noticed the white powder. Therefore, it was immediately apparent to Woolf that the baggie contained contraband We find that all of the requirements for the plain view exception have been met. Appellant's sole assignment of error is found not well-taken.
 {¶ 20} Upon due consideration, we find that appellant was not prejudiced or preventing from having fair proceedings, and the decision of the Sandusky County Court of Common Pleas is affirmed. Appellant is order to pay the court costs of this appeal pursuant to App.R. 24.
Judgment Affirmed.
Knepper, J., Pietrykowski, J., Singer, J., Concur.