JOURNAL ENTRY and OPINION
The defendant-appellant herein, Demetrius Long, appeals from Reasons adduced below, we affirm the verdict of the trial court.
On January 28, 1999, two Cleveland police officers were summoned to the Longwood Estates housing project by a private, unarmed security guard who was patrolling the premises. The security officer notified the police officers of the presence of three individuals in a parked car, two of whom had threatened the officer while at the housing project the prior evening when he instructed them that they were not authorized to park at the site. The security officer also provided a description of the vehicle in question, a description of the perpetrators and the license plate number of the vehicle.
When the two officers arrived on the scene, approximately two and one-half minutes after being called, they observed the subject vehicle, a white Camaro, which was parked and which contained three males fitting the description provided by the security officer. The police officers confirmed that the vehicle's license plate number was the same as that which had been reported by the security officer. At this point the officers exited their cruiser[1] and approached the white Camaro and ordered the occupants of the vehicle to show their hands. As the officers proceeded to cover the short distance between their cruiser and the parked car, they noticed a large cloud of white powder in the back seat of the Camaro. The officers had earlier noticed furtive movements from within the car and one of the officers also noticed a plastic bag in the back seat. The officers concluded that the occupants of the vehicle were attempting to conceal a large amount of cocaine and in so doing had spilled the substance in the back seat of the car. At this juncture the officers ordered the occupants out of the vehicle.
The appellant, who had been sitting in the driver's seat of the vehicle, gave his consent for the officers to search the vehicle. A search of the vehicle revealed a plastic bag containing cocaine partially wedged between the back seats. The police officers also observed a white streak on the face of the back seat occupant after he had been ordered out of the car. Each of the three were placed under arrest for suspected possession of drugs. Subsequently performed scientific testing of the substance in the plastic bag confirmed that it was indeed cocaine.
The appellant was indicted on July 15, 1998. The indictment contained three counts. The first count charged the appellant with Preparation of Drugs for Sale in violation of R.C. 2925.07, with a Schoolyard Specification as provided by R.C. 2925.03(C)(2)(b). The second count charged the appellant with Possession of Drugs under R.C. 2925.11. Finally, the third count charged the appellant with Possessing Criminal Tools in violation of R.C. 2923.24. A jury trial commenced on September 30, 1999. The appellant was tried simultaneously with co-defendant Arthur Little who was one of the other occupants of the white Camaro.[2] On October 4, 1999, the jury returned a verdict finding the appellant guilty on count two, but not guilty on counts one and three. The trial court sentenced the appellant to two years imprisonment at the Lorain Correctional Institution. The appellant timely filed the within appeal challenging the verdict, as well as several evidentiary rulings made by the trial court.
The appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE.
The appellant's motion to suppress challenged the legality of the arresting officers' initial stop of the appellant.
In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. State v. Mills (1992), 62 Ohio St.3d 357; State v. McCulley (Apr. 28, 1994), Cuyahoga App. No. 64470, unreported. The trial court assumes the role of trier of fact in a suppression hearing and is, therefore, in the best position to resolve questions of fact and evaluate credibility of witnesses. State v. Klein (1991), 73 Ohio App.3d 486. Appellate courts should give great deference to the judgment of the trier of fact. State v. George (1989),45 Ohio St.3d 325. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Klein, supra.
The Fourth Amendment to the United States Constitution provides in part: the right of the people to secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *. The Fourth Amendment to the United States Constitution and Section 14, Article One of the Ohio Constitution requires the police to obtain a warrant based upon probable cause before they conduct a search. However, the warrant requirement is subject to a number of well-established exceptions. Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022.
In Terry v. Ohio (1968), 392 U.S. 1, 20 L.E.2d 889, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity. The Supreme Court stated:
 * * * We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
Id. at 330.
It should be noted that the level of suspicion required for a Terry stop is less demanding than that required to establish probable cause. United States v. Montoya de Hernandez (1985), 473 U.S. 531,105 S.Ct. 3304, 87 L.Ed.2d 381. Probable cause has been defined as a fair probability that contraband or evidence of a crime will be found. Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317,76 L.Ed.2d 527.
In order to justify an investigative stop under Terry, supra, a police officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Id. at 27. The Fourth Amendment requires a minimal level of objective justificationfor making the stop. INS v. Delgado (1984), 466 U.S. 210, 217, 104 S.Ct. 1758, 1763,80 L.Ed.2d 247.
The United States Supreme Court has held since an effort to define reasonable and/or articulable suspicion creates unnecessary difficulty, that when evaluating the validity of a stop such as this, a court must consider the totality of the circumstances — the whole picture. United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695,66 L.Ed.2d 261. As the United States Supreme Court stated in Illinois v. Gates, supra, at 231, 232:
 The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; * * *. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
In considering the totality of the circumstances, courts must also give due deference to the police officer's training and experience. The totality of the circumstances must be viewed through the eyes of a reasonably prudent police officer at the scene, who must react to sometimes life-threatening events as they unfold. State v. Freeman (1980), 64 Ohio St.2d 291.
In the instant case, the arresting officers were called to the scene by a security officer who had allegedly been threatened by the appellant and a companion. The security officer had reported the alleged threat on the day after it occurred at which time he was instructed to notify the two arresting officers if he came across the same individuals again. Soon thereafter the security guard viewed the same two individuals, as well as a third person, in the same vehicle and promptly notified the two arresting officers. These two officers thus had more than sufficient reason to believe that the occupants of the car were the same persons who had been involved in the previous evening's incident and thus had an objectively reasonable suspicion upon which to base their investigatory stop of the appellant's vehicle.
Additionally, the officers testified that the appellant consented to the search of his vehicle. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to voluntary consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219, 36 L.Ed.2d 854, 93 S.Ct. 2041. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "clear and positive" evidence that the consent was "freely and voluntarily" given.State v. Posey (1988), 40 Ohio St.3d 420, 427; State v. Danby (1983), 11 Ohio App.3d 38; State v. Davis (1992),80 Ohio App.3d 277.
The investigatory stop in this case was of very short duration. As the arresting officers exited their vehicles and approached the appellant's vehicle, they almost immediately observed a large cloud of white powder in the back seat of the car, as well as a large plastic bag. The officers reasonably concluded that this white, powdery substance was more likely than not cocaine. Once the officers personally observed the presence of cocaine, they then had probable cause to effect an arrest under the plain view doctrine. This court recently summarized the plain view doctrine in State v. Kimmie (July 2, 1998), Cuyahoga App. No. 72904, unreported, as follows:
 * * * It has long been the rule that where an initial intrusion by police officers is lawful, an incriminating object that comes into plain view during that intrusion may be seized without a warrant. State v. Williams (1978), 55 Ohio St.2d 82, 377 N.E.2d 1013.
 Whether an object is in "plain view" is determined by the following analysis:
 In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities.
Id. at syllabus 1.
The Ohio Supreme Court defined the last requirement of the plain view doctrine in the syllabus of State v. Halczyszak (1986), 25 Ohio St.3d 301,496 N.E.2d 925, as follows:
 The "immediately apparent" requirement of the "plain view" doctrine is satisfied when police have probable cause to associate an object with criminal activity.
 On ascertaining the required probable cause to satisfy the "immediately apparent" requirement, police officers may rely on their specialized knowledge, training and experience.
The record in this case established that not only was the search of the vehicle justified by the appellant's consent to the same, but that the officers would also have been justified in conducting a search of the appellant's vehicle without his express consent as the incriminating nature of the spilled cocaine in the back seat of the appellant's car was immediately apparent to the officers when they observed the large cloud of white powder.
The appellant also objects in this assignment of error to the trial court's failure to issue written findings of fact when it denied the appellant's motion. The appellant neglects to mention that there was never any request made by counsel, either in the text of the motion or on the record, for written findings of fact.
Criminal Rule 12(E) provides, in relevant part, that "where factual issues are involved in determining a motion, the court shall state it's essential findings on the record." "A trial court must, upon the defendant's request, state essential findings of fact in support of its denial of a motion to discharge for failure to comply with the speedy trial provisions of R.C. 2945.71." (Emphasis added.) State v. Brown (1992), 64 Ohio St.3d 476, 481, 597 N.E.2d 97, citing Bryan v. Knapp (1986), 21 Ohio St.3d 64, 65, 488 N.E.2d 142. In order for a court to have a duty to issue findings of fact, there must be a request from the defendant. Id. The record being devoid of any such request on the part of the appellant in the instant case, the trial court had no duty to issue findings of facts. Therefore, this assignment of error is overruled.
The appellant's second assignment of error states:
 II. DEFENDANT-APPELLANT'S CONVICTIONS TO THE CHARGES WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.
In this assignment of error the appellant combines an allegation of insufficiency of the evidence with a manifest weight of the evidence assignment. These are, of course, two separate and distinct concepts and should have been argued separately by the appellant. App.R. 16(A); App.R. 12(A)(2).
In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed. State v. Jenks, supra, paragraph two of the syllabus.
More recently, in State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio State Supreme Court stated the following with regard to the sufficiency as opposed to the manifest weight of the evidence:
 With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain the conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
We also note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
As has already been noted in our discussion of this assignment, the standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
Therebeing sufficient evidence to support the conviction as a matter of law judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
In the present case there was ample evidence upon which the jury could base its verdict. One of the arresting officers stated that as he and his partner approached the car, he observed constant activity and that he also noted that the two front seat passengers kept turning around towards the back seat despite being ordered to show their hands by the arresting officers. The officer specifically stated that the appellant popped up as the officers were approaching the vehicle and turned towards the middle of the car as if he was placing something in the back seat.
The fact that Marshall Crumb, the back seat passenger, testified that the confiscated cocaine belonged to him and that the appellant and the co-defendant did not know of its existence does not make the appellant's conviction invalid as being against the manifest weight of the evidence. The jury was free to believe some, all or none of Mr. Crumb's testimony. Crumb specifically contradicted the arresting officers' testimony in his description of the location of the plastic bag containing cocaine in the Camaro, his insistence that the bag was knotted at the time that the police recovered it and his denial that the cocaine was spilled or that he had a white streak on his face. Additionally, the state produced a veteran narcotics detective who testified that Crumb's story that he purchased the cocaine on the street from a person he did not know was not credible because such street level cocaine transactions simply do not take place as the cocaine would have a far greater value if it was made into individual rocks of crack cocaine. The detective also testified that there would be no way to confirm the purity of powdered form cocaine purchased from an unknown street hustler. Thus, Crumb's veracity as a witness was called into question on at least several occasions.
The officers' testimony was corroborated in all relevant aspects by the testimony of the private security guard who had been previously threatened by the appellant and the co-defendant and who witnessed the entire investigatory stop and arrest. The security guard also confirmed that it had been the appellant and co-defendant Little, but not Crumb, who had made the initial threats against him.
The testimony of the arresting officers and the security guard as to the suspicious movements and other behavior of the appellant provided competent and credible evidence as to all of the essential elements of the case. Thus, the verdict was not against the manifest weight of the evidence. Similarly, it cannot be said as a matter of law that the jury clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed. Therefore, this assignment of error is overruled.
The appellant's third assignment of error states:
 III. THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTOR TO INSTRUCT THE JURY ON THE LAW.
In this assignment of error the appellant contends that the prosecutor made a statement incorrectly defining the elements of possession as they relate to R.C. 2925.11, under which the appellant was convicted. Specifically, the appellant contends that the jury may have been misled because the prosecutor did not state that it is necessary that a person knowingly exercise control over an object or a statute in order to possess it under the statute.
Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovich (1987), 33 Ohio St.3d 19; State v. Papp (1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13 . In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266; State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338, unreported. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,947, 71 L.Ed.2d 78, 87. In addition, should a defendant fail to object to the prosecutor's allegedly improper comments at trial pursuant to Crim.R. 52(B), the comments in question must rise to the level of plain error affecting the substantial rights of the defendant before this court can take notice of the error. Under a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial would clearly have been different. State v. Kent (1980), 68 Ohio App.2d 151; State v. Parker (Oct. 5, 1995), Cuyahoga App. No. 68156, unreported.
Our review of the record indicates that appellant's trial counsel failed to object to the allegedly improper statement of law at the time that it was made. Because we find no plain error in the trial court's permitting the subject remarks to be made during closing argument, this assignment is without merit.
Additionally, a review of the transcript clearly indicates that the prosecutor was merely referencing the fact that more than one person can be convicted of possessing the same object or substance, which is an accurate statement of law. These remarks made during closing arguments were not intended as a comprehensive definition of the elements that must be proven in order to sustain a conviction under R.C. 2925.11. In its jury instructions, the trial court clearly and thoroughly instructed the jury on the necessary elements of possession and on the function of closing arguments in a trial.
Because we find that the appellant was in no way prejudiced by the allegedly inaccurate prosecutorial statement of the law of Possession (sic) this assignment of error is not well-taken.
The appellant's fourth assignment of error states:
 IV. PROSECUTORIAL MISCONDUCT WAS COMMITTED DURING CROSS-EXAMINATION OF WITNESS CO-DEFENDANT REGARDING HIS OPINION WHETHER ANOTHER WITNESS WAS LYING.
An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith, supra. (Emphasis added.) The alleged improper comments made by the prosecutor which are the subject of this assignment of error were made during the cross-examination of the co-defendant Arthur Little and did not relate in any manner to the appellant's activities on the evening in question. Thus, it is hard to ascertain how these remarks could have substantially prejudiced the appellant.
The inquiry in question merely involved asking Little if his testimony that he had not exited a building at the Longwood Estates with Marshall Crumbs could be reconciled with the testimony of the private security guard if the security guard had stated that he had witnessed such an event. Contrary to the appellant's assertion in this assignment of error, this line of questioning did not require that the jury balance the credibility of the witness against that of a police officer. The prosecutor did not ask the co-defendant whether a police officer might have lied during his testimony, but, rather, whether the private security guard might have lied.
In fact, as the jury was undoubtedly aware, the testimony of the witness in this regard was consistent with that of the security guard. Thus, the effect of the line of questioning may actually have been to buttress the credibility of the co-defendant.
In any event, the issue of whom the co-defendant was seen exiting a building with immediately prior to the initial encounter with the private security guard is tangential to the ultimate issue of whether the sufficient competent evidence existed to convict the appellant of possession of cocaine. We are unable to conclude that the jury would have acquitted the appellant on count two of the indictment if the objection to this line of questioning was sustained. Therefore, the appellant was clearly not substantially prejudiced by this line of questioning. This assignment of error is overruled.
The appellant's fifth assignment of error states:
 V. THE TRIAL COURT ERRED BY ENGAGING IN AN EX PARTE COMMUNICATION WITH THE DELIBERATING JURY OUTSIDE THE PRESENCE OF COUNSEL VIOLATING APPELLANT'S RIGHTS PURSUANT TO THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 5, 9, AND 16 OF THE OHIO CONSTITUTION.
During the jury's first day of deliberations, the jurors sent a note to the trial court which indicated that the jury was unable to reach a decision. The trial court responded in writing, on the same piece of paper on which the jury's note was written, Please continue to deliberate. You have only just begun your first day of deliberations. The appellant alleges that this innocuous response from the trial court improperly emphasized the necessity to reach a verdict. In fact, the short, plain response to the jury's question provided by the trial court probably placed less of an emphasis on the necessity to reach a verdict than the traditional Howard charge which the appellant claims should have been provided. See, State v. Howard (1989), 42 Ohio St.3d 18, paragraph two of the syllabus.
The decision to provide the supplemental instruction approved in Howard is within the sound discretion of the trial court and, therefore, will not be reversed absent an abuse of that discretion. State v. Ballew (Feb. 26, 1999), Hamilton App. No. C-980442, unreported. An abuse of discretion means more than a mere error of law or judgment; it implies that the court's decision is unreasonable, arbitrary, or unconscionable. Atkinson v. International Technegroup, Inc. (1995), 106 Ohio App.3d 349,358.
It is a well-settled principle that the law encourages jurors to agree, not to deadlock, and a court may urge a jury to make a reasonable effort to reach a verdict. State v. Sabbah (1982), 13 Ohio App.3d 124,138, 468 N.E.2d 718, 733. The instruction formulated by Howard is to be given to a jury "when determination has been made that the jury is deadlocked in its decision." State v. Minnis (Feb. 11, 1992), Franklin County App. No. 91AP-844, unreported. There is no bright line rule that may be used to determine when a jury is deadlocked and when the supplemental charge should be read to the jury. Id.
In the present case, the comments made by the jury indicating that they had not reached a verdict occurred only a few hours after deliberations had begun. An initial comment by the jurors after only a short period of deliberation does not require that the Court immediately give a Howard instruction. State v. Gray (Mar. 30, 2000), Hancock App. No. 5-99-51, unreported. State v. Dickens (May 8, 1998), Hamilton County App. No. C-960365, unreported.
The instruction given in the instant case was in no way coercive or suggestive. Rather, the response to the jury question was balanced and neutral as required under Howard. Howard, supra, 42 Ohio St.3d at 24.
The transcript filed by the appellant does not contain any proceedings relating to jury deliberations or the reading of the verdict. There is nothing in the record which indicates that appellant objected to the trial court's instruction that the jury continue to deliberate at any time during the trial court proceedings. Therefore, this court is unable to reverse the trial court's failure to give a Howard instruction absent plain error. Finding no plain error, this assignment of error is overruled.
The appellant's sixth and final assignment of error states:
 VI. THE TRIAL COURT OVER OBJECTION PERMITTED THE PROSECUTOR TO SOLICIT TESTIMONY REGARDING THE ARRESTING OFFICER'S FAMILY TREE WHICH WAS DESIGN (SIC) TO GIVE IT MORE WEIGHT AND TO BUTRESS (SIC) THE OFFICER'S TESTIMONY.
This decision has already laid out the standard of review for an assignment of error alleging prosecutorial misconduct in our discussion of assignments of error three and four. In this assignment of error the appellant alleges that he was unfairly prejudiced when the trial court failed to sustain his counsel's objections to background questions asked of Patrolman Daniel Lentz concerning members of his family employed in the field of law enforcement. In response to these questions, Lentz stated that several members of his immediate family, as well as other relatives, either were presently employed as police officers or had been so employed in the past.
The appellant herein characterizes this testimony as highly inflammatory and prejudicial to defendant-appellant's right to a fair and impartial trial.
We find the appellant's argument entirely speculative and utterly without merit. There is absolutely no reason to believe that the jury considered the family background of one of the arresting officers in reaching its decision as to the appellant's culpability on the charge of illegally possessing a large quantity of cocaine. It is routine that police officers, as well as other witnesses, are asked questions concerning their training, experience, marital status and whether they have children. It is safe to say that seldom, if ever, do these questions have any determination on the ultimate outcome of a case.
Finding no evidence of substantial prejudice to the appellant arising from the background inquiries made of Officer Lentz, this assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ MICHAEL J. CORRIGAN JUDGE
PATTON, P.J., CONCURS. BLACKMON, J., CONCURS IN JUDGMENT ONLY.
[1] The two Cleveland police officers were, at the time of the arrest, working a private duty assignment for a private security company, CQAT, which had been retained to patrol and provide security at the Longwood housing project. The vehicle which the officers were driving was a former police cruiser which had been remarked with the CQAT logo.
[2] Co-defendant Little has filed a separate appeal from the verdict of the jury. See Case No. 77258. The third occupant of the vehicle, Marshall Crumb, accepted an offer to plea prior to trial.