JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Paul McPherson, appeals his convictions for carrying a concealed weapon in violation of R.C. 2923.12, having a weapon while under disability in violation of R.C. 2923.13, escape in violation of R.C. 2921.34, and possessing criminal tools in violation of R.C. 2923.24. For the reasons stated below, we affirm appellant's convictions.
 {¶ 2} In 2005, appellant was charged with carrying a concealed weapon, having a weapon while under disability, escape, and possessing criminal tools. At the time of the events that led to the charges, appellant was under community controlled sanctions resulting from a conviction in 2004 for drug possession and drug trafficking. Appellant moved to suppress evidence recovered by police and statements made after he was stopped and searched by police. The trial court denied his motion. Appellant entered a plea of guilty to all four offenses, the court ordered a presentence report and set a date for sentencing. At the subsequent sentencing hearing, the trial court permitted appellant to change his plea to no contest for the sole purpose of allowing him to perfect his appeal of the trial court's ruling on the motion to suppress. The trial court found appellant guilty as to all four counts in the indictment.
 {¶ 3} The facts leading to this appeal show that at approximately 2:30 a.m. on October 23, 2005, an East Cleveland auxiliary police officer made a report of hearing shots fired behind a bar on Euclid Avenue. East Cleveland police officers Williams, *Page 4 
Vargo, and Gardner responded. Williams, a sergeant with 12 years on the force, pulled into the parking lot behind the bar from the North Taylor entrance. He observed appellant standing next to a red car. Appellant was the only person in the parking lot behind the bar. When appellant saw the police car turn in, he immediately turned away from the red car and began moving quickly toward the Coit Avenue exit of the parking lot. Williams instructed the police units entering from Coit Avenue to stop appellant.
 {¶ 4} Vargo, an officer with six years on the force, stopped appellant and asked him what he was doing and if he had heard shots fired. Appellant said he did not hear any shots. Vargo patted down the appellant to be sure he did not have any weapons and placed him in the back of a patrol unit while he continued his investigation. Vargo testified that while patting down appellant, he did not find any weapons but did feel what he thought were keys in appellant's coat pocket. After looking around the parking lot where appellant had been stopped, Vargo went up to the red car. He shined a flashlight inside the driver's window of the red car and observed the handle of a handgun sticking out from under the seat. He called the other officers over to see it.
 {¶ 5} When asked about the vehicle, appellant denied that the car was his and said his girlfriend dropped him off at the bar. He also denied having keys to the car. The officer reached into appellant's coat pocket and removed the keys he had felt earlier. The keys opened the door to the red car and appellant was given his *Page 5 Miranda rights and placed under arrest. When asked about the gun in the car, appellant admitted that the gun was his but denied firing any shots. He said another person had fired at him and that he kept the gun for protection.
 {¶ 6} In his single assignment of error, appellant asserts that the trial court erred in denying his motion to suppress. Appellant claims the police had no justification for stopping him, had no lawful reason to pat him down, and had no right to search him or enter the red car without a warrant. We disagree.
 {¶ 7} Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Harris (1994),98 Ohio App.3d 543, 546. Accepting these facts as true, the appellate court must then independently determine whether the facts satisfy the applicable legal standard. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8.
 {¶ 8} The Fourth Amendment, made applicable to the states through theFourteenth Amendment, Mapp v. Ohio (1961), 367 U.S. 643, provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly *Page 6 
describing the place to be searched, and the persons or things to be seized." Fourth Amendment to the United States Constitution. Warrantless searches "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."Katz v. United States (1967), 389 U.S. 347, 357.
 {¶ 9} Where there is no search warrant, the state has the burden of showing that a search comes within one of the judicially recognized exceptions: (a) A search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine.State v. Akron Airport Post 8975 (1985), 19 Ohio St.3d 49, at syllabus.
 {¶ 10} The stop and frisk doctrine, recognized by the United States Supreme Court in Terry v. Ohio (1968), 392 U.S. 1, allows a police officer to stop and detain an individual, even without probable cause to arrest, if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Id. If there is a reasonable suspicion that the person stopped may be armed and dangerous, the officer is permitted a limited pat-down search for weapons as a safety precaution. Id. at 24; see, also, State v.Andrews (1991), 57 Ohio St.3d 86.
 {¶ 11} A reviewing court, to determine whether reasonable suspicion exists, must examine the "totality of the circumstances" as viewed through the eyes of "a *Page 7 
reasonable and prudent police officer on the scene." Andrews, supra, 87-88, citing United States v. Cortez (1981), 449 U.S. 411, 417-418. The court must give weight to the police officer's experience and training and understand that a police officer, because of that training, is able to draw inferences and make deductions from those circumstances that might elude an untrained person. Cortez, 449 U.S. at 418.
 {¶ 12} In the instant case, the police officers were responding to a report of shots fired behind a bar at 2:30 in the morning. The report had been made by another East Cleveland officer. The bar and the shopping center area next to it were known to police. They were called there on a regular basis, sometimes as many as four or five times a night on weekends. Sergeant Williams testified that in his experience when shots are fired people usually scatter, with the exception of the person shooting because he has knowledge of the gun and so is not afraid. There were people outside the front of the bar when police arrived, but appellant was the only person in the parking lot behind the bar where reportedly shots were fired. Appellant was observed standing next to the driver's door of a red car and was seen turning from the car and moving quickly toward the exit after spotting the police.
 {¶ 13} Based upon the totality of the circumstances as viewed by the officers on the scene, we find that there existed reasonable suspicion for the police to stop and frisk appellant and detain him in the patrol car for a brief time while the officers conducted their investigation. Appellant was in the police car for only two or three *Page 8 
minutes when the police discovered the gun in the car appellant had been standing next to when the officers arrived on the scene.
 {¶ 14} We disagree with appellant's claim that the police could not seize the gun. The gun was in plain-view on the floor of the red car. Under the plain-view doctrine, the police may seize an item without a warrant if the initial intrusion leading to the discovery of the item was lawful and it was immediately apparent that the item was incriminating. State v. Waddy (1992), 63 Ohio St.3d 424, 442. State v.Suber (1997), 118 Ohio App.3d 771, 776; see State v. Young (May 7, 1987), Cuyahoga App. No. 51984. We agree with the trial court's finding that there was no "search" of the car. The car was parked in a public parking lot. The police were outside the car and used a flashlight to look through the window. There is no expectation of privacy in such a situation. Since the initial intrusion was lawful, the gun was discovered by lawful means and the police could seize it without a warrant.
 {¶ 15} Appellant asserts that the police violated his constitutional rights by reaching into his pocket and removing the keys to the red car. Appellant argues that because of this illegal intrusion, the gun and statements he made relating to the gun must be suppressed. We find no merit to this argument.
 {¶ 16} The police were investigating a possible shooting in the vicinity of the parking lot. The police found a gun on the floor of a red car in the lot. Appellant was standing next to the car until he spotted the police, then he tried to leave the lot. Appellant told police he did not have car keys on him. The police knew that *Page 9 
appellant had keys in his pocket. The keys were discovered during the pat-down search prior to placing appellant in the patrol car. We have already determined that the search leading to discovery of the keys was lawful. Based upon an analysis of the totality of the circumstances, we find that there existed both exigent circumstances and probable cause for the police to search appellant's coat pocket and remove the car keys.
 {¶ 17} Lastly, appellant alleges that the police violated his Fifth
and Fourteenth Amendment rights by obtaining oral statements from him prior to giving him his Miranda rights. Appellant does not identify which oral statements were allegedly obtained by police prior to giving him the Miranda warnings, but states that all statements made by him and all evidence obtained as a result thereof must be suppressed. Again, we disagree.
 {¶ 18} The trial court found that the defendant was given hisMiranda rights, not once, but twice by two different officers, prior to admitting that the gun was his. The trial court's findings relating to the oral statements made by appellant are supported by competent, credible evidence and we accept these findings.
 {¶ 19} Having addressed each of appellant's arguments, and finding no merit to those arguments, we overrule appellant's assignment of error and affirm the judgment of the trial court.
It is ordered that appellee recover of appellant its costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 10 
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, P.J., and MARY J. BOYLE, J., CONCUR *Page 1