JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Appellant Reuben Rankin appeals his kidnapping convictions. After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} On August 10, 2005, appellant was indicted on four counts. Counts one and three alleged aggravated robbery under R.C. 2911.01. Counts two and four alleged kidnapping under R.C. 2905.01. All four counts carried one-and three-year firearm specifications. The trial court denied appellant's motion to suppress evidence on December 19, 2005. On April 6, 2006, appellant pleaded no contest; however, on May 26, 2006, the plea was withdrawn and the case proceeded to a jury trial.
 {¶ 3} The jury found appellant guilty of kidnapping under counts two and four. He was found not guilty of aggravated robbery in count three, and the jury was hung on the first count of aggravated robbery. The trial court sentenced appellant to five years on each count of kidnapping, to be served concurrently, and consecutively to a sentence of three years for the mandatory firearm specification.
 {¶ 4} The facts that gave rise to this appeal began with the July 27, 2005 investigation of an alleged aggravated robbery of Marietta Stovall and William Isaac. Stovall testified that she ran her ice cream truck business from her home. She had employed appellant's brother, Lionel, but he had been fired for allegedly stealing. According to Stovall, employees William Isaac and William Clark arrived for work on July 27, 2005. Stovall testified that on that evening, appellant brought a gun to her home and said, "give me the money." Stovall gave him a cash box; however, appellant was not satisfied with that and demanded that he "want[ed] the safe" *Page 3 
instead. In response, Stovall pushed appellant and threw a stool at him in an effort to get away.
 {¶ 5} Appellant's version of the facts differed significantly from Stovall's version. Appellant testified that he did not bring a gun to Stovall's home and had only gone there to speak with her on Lionel's behalf regarding the alleged stealing. Appellant claimed that Stovall lied about him having a gun for fear of being prosecuted for assaulting him (by shoving him). Appellant further contends that, although Stovall testified that she had not seen him before, Stovall had seen him before in photographs in which he was posing with a gun. Appellant claims that the photographs were taken as a part of his career as a recording artist and that Lionel had taken those photos to work on a prior occasion.
 {¶ 6} Isaac testified that after he returned to Stovall's house that evening to return the ice cream truck, a person came looking for Stovall. That person held Isaac at gunpoint for 15 minutes while Stovall worked in the truck. Unbeknownst to Stovall, they followed her into her house. Isaac heard the gunman say "give me the money" and demand the safe. He also saw Stovall push the gunman down and run. Isaac identified appellant as the gunman.
 {¶ 7} The victims described appellant as wearing "a Dickie uniform, tan top, button up shirt * * * and tan pants." They also described the gun as "a weapon that you put a magazine into * * *" and that there was a very distinct gray stripe down the slide of the weapon. *Page 4 
 {¶ 8} Another of Stovall's employees, Joseph Adkins, testified that he also arrived at Stovall's residence that same evening and saw appellant walking with his hands in the air. Appellant and Stovall were screaming at each other. According to Adkins, appellant did not have a gun. Adkins also testified that Lionel had brought a photograph of appellant posing with the gun to work. This testimony corroborated appellant's assertion that Stovall had seen him before in the photographs.
 {¶ 9} William Clark had witnessed the alleged crimes take place, but had fled the scene at some point. Police were eventually able to locate Clark, and he was able to show Cleveland Police Detective John Kraynik where appellant lived.
 {¶ 10} After obtaining an arrest warrant, police went to the residence appellant shared with his girlfriend. Appellant was handcuffed by Det. Kraynik. Det. Kraynik's partner, Philip Habeeb, found the alleged weapon. As he secured the area, Habeeb saw "the butt [of a gun] sticking out of [a crate]" in an open closet six feet from where appellant stood. Clothes that matched the descriptions given by the victims were lying on the bedroom floor. Det. Kraynik testified that everything seized was in plain view and that he only did a protective sweep. He took photographs depicting the state of the apartment when he arrived.
 {¶ 11} Warrensville Heights Police Department Officer Steven Vida was also on the scene within seconds. Officer Vida corroborated Det. Kraynik's testimony that the clothes were on the floor in plain view and that the police were in the residence no longer than 30 minutes. *Page 5 
 {¶ 12} Appellant's girlfriend, Danni Johnson, who was with appellant during his arrest, also testified at trial. According to Johnson, the police searched drawers and perfume boxes in the bedroom. Johnson also testified that the police were there for about two-and-a-half hours, not just 30 minutes. She further testified that officers took the gun, which actually belonged to her, out of the box in the closet. According to Johnson, neither the clothes nor the gun were in plain view.
 {¶ 13} Appellant testified on his own behalf. He claims that he was awakened with a gun in his mouth and threats from the police officers that he needed to cooperate or be killed. He testified that the officers searched his bedroom and found the clothes in the laundry basket, not on the floor. Finally, appellant testified the police were staging photos. For example, he testified that the police put the gun in the basket and then photographed it. Appellant denied committing the robbery and the allegation that he brought a gun with him to the Stovall residence.
 {¶ 14} Appellant moved to suppress the evidence found by the police during his arrest. The trial court denied the motion and found that "the evidence supports the fact that the search of the closet took place with[in] * * * 6 to 8 feet of the defendant's lawful arrest where the gun was found and the clothes were thrown on the floor."
 {¶ 15} The jury convicted appellant on two counts of kidnapping with the two gun specifications.
 {¶ 16} Appellant brings this appeal, asserting three assignments of error for our review. *Page 6 
 Motion to Suppress {¶ 17} "I. The trial court erred in denying appellant's motion to suppress."
 {¶ 18} In his first assignment of error, appellant challenges the trial court's denial of his motion to suppress. More specifically, he argues that the police officers exceeded the permissible scope of a search incident to a lawful arrest, and the evidence obtained as a result should have been suppressed. This argument is without merit.
 {¶ 19} In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. State v.Mills (1992), 62 Ohio St.3d 357; State v. McCulley (Apr. 28, 1994), Cuyahoga App. No. 64470. The trial court assumes the role of trier of fact in a suppression hearing and is therefore in the best position to resolve questions of fact and evaluate the credibility of witnesses.State v. Klein (1991), 73 Ohio App.3d 486. Appellate courts should give great deference to the judgment of the trier of fact. State v.George (1989), 45 Ohio St.3d 329. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Klein, supra.
 {¶ 20} The Fourth Amendment to the United States Constitution provides in part: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment to the United States Constitution and Section 14, Article One, of the Ohio Constitution require the police to obtain a warrant based upon probable cause before they conduct a search. However, the warrant requirement is subject to *Page 7 
a number of well-established exceptions. Coolidge v. New Hampshire
(1971), 403 U.S. 443, 91 S.Ct. 2022.
 {¶ 21} One such exception includes evidence found in plain view. Upon the proper execution of an arrest warrant, "subsequent discovery of any evidence in plain view does not constitute a violation of thefourth amendment * * * and is not subject to suppression per Mapp v. Ohio (1961),367 U.S. 643 * * *." State v. Taylor (Dec. 16, 1993), Cuyahoga App. No. 62692. Further, "the police may seize an item without a warrant if the initial intrusion leading to the discovery of the item was lawful and it was immediately apparent that the item was incriminating." State v.McPherson, Cuyahoga App. No. 88308, 2007-Ohio-1973.
 {¶ 22} In addition, while properly executing an arrest warrant, officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be launched." Maryland v.Buie (1990), 494 U.S. 325, 334. It is important to note that "law enforcement bears the burden of demonstrating that * * * police possessed specific and articulable facts `that the area to be swept harbors an individual posing a danger * * *.'" State v. Mickey, Cuyahoga App. No. 82844, 2003-Ohio-6878, quoting Buie, 494 U.S. at 325.
 {¶ 23} After obtaining a lawful search warrant, officers went to Johnson's residence. Det. Kraynik and Officer Vida testified that the clothes were on the floor in plain view. Det. Kraynik also testified that when his partner Habeeb checked the open walk-in closet, which was within six feet of appellant's arrest, he saw the butt of the gun in plain view. The police officers conducted the protective sweep of the *Page 8 
closet because they feared there might be other people who posed a danger in that closet. The protective sweep was warranted because the nature of the alleged crime (aggravated robbery) gave the police a strong reason to believe that the situation posed a risk of serious harm to the officers.
 {¶ 24} The trial court was in the best position to decide questions of fact and determine the credibility of witnesses. In its role as trier of fact, it determined that the items were in plain view and that the protective sweep of the closet to protect the officers was justified. Because the trial court's determinations were supported by competent and credible evidence, we are bound to accept the trial court's findings. Accordingly, appellant's first assignment of error is overruled.
 Motion for Acquittal {¶ 25} "II. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support convictions for kidnapping under R.C. 2905.01(A)(2)."
 {¶ 26} In his second assignment of error, appellant argues there was insufficient evidence to convict him on two counts of kidnapping. We disagree.
 {¶ 27} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 28} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial *Page 9 
to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)" Id. at ¶ 2 of the syllabus.
 {¶ 29} More recently, in State v. Thompkins (1997), 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 30} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 [*387] S.Ct. 2211, 2220,72 L.Ed. 2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed. 2d 560." Id. at 386-387. *Page 10 
 {¶ 31} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case.Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 32} According to R.C. 2905.01(A)(2):
 {¶ 33} "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 34} "* * *
 {¶ 35} "(2) To facilitate the commission of any felony or flight thereafter."
 {¶ 36} Two people (Stovall and Isaac) testified that appellant held them at gunpoint while asking for money. Appellant, by force, restrained the liberty of two people in order to commit a felony, meeting the elements of R.C. 2905.01(A)(2). Also, appellant was arrested with the gun and clothes described by the victims at the scene of the arrest. The convictions for kidnapping were clearly supported by competent, credible evidence. After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of kidnapping proved beyond a reasonable doubt. Accordingly, appellant's second assignment of error is overruled.
 Inconsistent Verdicts *Page 11 {¶ 37} "III. The trial court erred in accepting guilty verdicts from the jury when the verdicts were contrary to the jury instructions and precluded by the doctrine of collateral estoppel."
 {¶ 38} Appellant argues that because the jury acquitted him of aggravated robbery, but found him guilty of both kidnapping charges, it returned inconsistent verdicts. More specifically, he contends that because the jury acquitted him of aggravated robbery, it was not permitted to also convict him of kidnapping. We find this argument without merit based on our previous decision in State v. Ware (Sep. 22, 1994), Cuyahoga App. No. 65917. In Ware, the defendant was found guilty of attempted kidnapping under R.C. 2905.01. According to Ware:
 {¶ 39} "Defendant first argues that the evidence was insufficient to support a conviction for attempted kidnapping since the jury acquitted him on the aggravated robbery charge.
 {¶ 40} "* * *
 {¶ 41} "Defendant maintains that a finding of guilt on the aggravated robbery count was a necessary predicate to finding the attempted kidnapping was committed to facilitate the commission of a felony or flight thereafter.
 {¶ 42} "State v. Adams (1978), 53 Ohio St.2d 223 * * * states `[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.' * * * Hence the jury could acquit on the aggravated robbery charge yet still find that defendant *Page 12 
had taken the necessary steps to commit the robbery that would meet the elements of attempted kidnapping under R.C. 2905.01(A)(2). State v.Algerio (1992), Cuyahoga App. No. 60162 * * *." Id.
 {¶ 43} Based on this court's holding in Ware, we find that the jury could acquit appellant on the aggravated robbery charge and also convict him of kidnapping. Accordingly, appellant's third assignment of error is overruled.
 {¶ 44} Judgment is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR *Page 1