JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Eddie Hanson, challenges the trial court's denial of his motion to suppress. Finding no merit to the appeal, we affirm.
 {¶ 2} Hanson was charged with two counts of drug possession, violations of R.C. 2925.11(A)(2), two counts of drug trafficking, violations of R.C. 2925.03(A)(2), and possession of criminal tools, a violation of R.C. 2923.24(A). The drug trafficking counts carried juvenile and forfeiture specifications, with one of the counts carrying a major drug offender specification. The drug possession counts likewise carried forfeiture specifications and a major drug offender specification. Hanson pled not guilty to the charges.
 {¶ 3} Prior to a bench trial, Hanson moved to suppress the evidence that police obtained in connection with executing a warrant for his arrest; namely, a digital scale, drugs, money, and Hanson's purported confession. Hanson contended that the officers exceeded the scope of the arrest warrant after he voluntarily surrendered, and that they had no authority to search the bedroom where they discovered the scale and drugs. The following evidence was presented at the suppression hearing.
 Suppression Hearing *Page 4 {¶ 4} On August 30, 2007, around 9:00 a.m., deputies of the Cuyahoga County Sheriff's Office ("CCSO"), Fugitive Warrant Unit, arrived at the residence of Shawna Spratt, Hanson's girlfriend, to execute an arrest warrant for Hanson.[1] Spratt responded to the knock on her front door and allowed the deputies entry. Almost immediately after they entered the residence, Hanson, who was dressed only in his boxer shorts, came out of the children's bedroom into the hallway, where he was arrested and handcuffed without incident.
 {¶ 5} As for the events that followed after Hanson's arrest, the state and Hanson offered conflicting testimony.
Prosecution's Version: Detective Sees Scale in Plain View; HansonAdmits Having Drugs
 {¶ 6} According to Detective Joseph Zickes, a 15-year veteran of the CCSO, he asked Hanson if he wanted to get dressed prior to leaving the house in order to spare him the embarrassment of having to go outside and to the station solely in his boxer shorts. Specifically, he asked: "Do you have any clothes you would like to wear out?" Hanson responded, "Yes, in my bedroom." Hanson then indicated which bedroom, directing Detective Zickes to the master bedroom.
 {¶ 7} Detective Zickes further testified that, upon retrieving Hanson's clothes from the floor next to the bed, he noticed a digital scale with what *Page 5 
appeared to be cocaine residue on it.[2] He then returned to the hallway and asked Hanson who owned the scale. After Hanson admitted to being the owner, Detective Zickes informed him that he was "under arrest for violation of state drug law and read him his rights." Detective Zickes next asked Hanson if there was any other contraband or drugs in the home. Hanson then admitted that there was cocaine in the closet and "money in the drawer in the bedroom." Detective Zickes testified that Hanson made it abundantly clear that the scale, drugs, and money belonged solely to him: "[Hanson] told me all along that he doesn't want his girlfriend to get in trouble and that it is all his. He admitted that all the stuff was his *** [a]fter I confronted him about the scale."
 {¶ 8} Detective Zickes repeatedly testified that Hanson was not threatened at any time during the encounter. Nor did the deputies use any threatening tactics to elicit information from Hanson.
 {¶ 9} The state offered photographs of the scene taken immediately following Hanson's arrest, which included the contraband confiscated, i.e., the digital scale, the drugs, and the money found in the dresser drawer. Detective Zickes testified that the photographs accurately depicted the scene and that *Page 6 
none of the items, including the scale, had been manipulated or moved. The state additionally offered (1) a written statement signed by Hanson, admitting to ownership of the scale, the drugs, and approximately $4,000, and (2) a written form signed by Hanson after he was taken to the station, acknowledging that he had been informed of hisMiranda rights.
Hanson's Version: Spratt Sees Officers Ransack Bedroom; No ConsentGiven
 {¶ 10} Spratt testified on Hanson's behalf; she is his girlfriend and the father of his youngest child. She stated that she was employed by the Cleveland Municipal School District as a teacher's assistant for children with special needs and had been operating a daycare out of her home until Hanson's arrest. On the day that the deputies arrived, she was home with her two young children and Hanson.
 {¶ 11} According to Spratt, she observed an officer alone in the master bedroom "pulling the headboard away from the wall." She further testified that the officer "had lifted up the skirt to the bassinet" located in the room. Spratt picked up her daughter and sat down on the bed. The officer then asked her to leave the room. *Page 7 
 {¶ 12} Shortly thereafter, Sergeant Wagner asked Spratt for consent to search the house, to which she responded "no." He asked her several more times but she refused each time.
 {¶ 13} Spratt later returned to her bedroom a second time to retrieve her identification. This time, she encountered two officers in the room, "moving things, looking behind things, picking things up." She then asked Sergeant Wagner if he had a search warrant; he responded "no" and "you wouldn't want that, because if I requested one, child care services would definitely find out and you will be shut down, and you don't want that." He further threatened her with the possibility of arrest and indicated that she needed to disclose where the drugs were located.
 {¶ 14} Following the deputies' arrest of Hanson and departure, Spratt later discovered that the box springs of the beds had been cut.
 {¶ 15} In commenting on the items confiscated from her home, Spratt testified that she had never seen drugs in her closet or a digital scale in her bedroom. She further stated that there was never more than $400 or $500 in the nightstand drawer next to the bed.
 {¶ 16} On cross-examination, Spratt testified that she began dating Hanson in 2006, shortly after he was released from prison. She admitted knowing that Hanson had been sent to prison for "drugs" and that he had an outstanding *Page 8 
arrest warrant for burglary. She believed Hanson was earning a living working with his cousin, "flipping" properties.
Trial Court's Findings of Facts and Conclusions of Law
 {¶ 17} At the close of the evidence, the trial court addressed Hanson and orally made numerous findings of fact and conclusions of law on the record. The trial court specifically found that the plain view doctrine applied to the discovery of the digital scale.
 {¶ 18} Applying the three prongs of the plain view doctrine, the court stated the following:
 {¶ 19} "I am going to find that the arrest warrant was the lawful right for the officers to be in the home, and there is consent to go get your clothes in the bedroom, or clothes for yourself, and that gave them the lawful right to go into the bedroom. *** I believe the testimony was such that while in the bedroom retrieving clothes for yourself that there was, the officer noticed the *** scale and what was perceived as illegal narcotics on the scale, *** and I am going to find that there was an inadvertent discovery of the illegal contraband; that it wasn't such that they were searching for it. *** Police may utilize their special knowledge, and I believe that was testified to, and their experience to justify the belief that probable cause exists to believe that the article seen in plain view is in fact incriminating evidence." *Page 9 
 {¶ 20} After finding that the discovery of the scale fell within the plain view doctrine, thereby justifying the deputies' seizure of the digital scale without a warrant, the trial court next considered what it deemed the "ultimate issue" in the case: whether Hanson gave consent to retrieve and seize the other contraband, i.e., drugs and money, that was in the home, and whether that consent was voluntarily given. The court found in the affirmative and denied the motion to suppress, stating the following:
 {¶ 21} "I am going to find that, after reviewing the totality of the circumstances, that there is no evidence to support the assertions by the defense counsel that your consent was obtained under the color of the badge or coerced, but rather I believe it was voluntarily given by yourself, Mr. Hanson, to accept responsibility and ownership of the contraband without implicating anybody else in this matter."
 {¶ 22} Following the denial of the motion to suppress, Hanson agreed to incorporate the evidence from the suppression hearing into the trial, and the matter proceeded to a bench trial. The trial court found him guilty on all five counts and guilty of the specifications attached to counts one, two, and five. As for the major drug offender specifications attached to counts three and four, the trial court found that the evidence of crack cocaine was less than 100 grams and, *Page 10 
therefore, found Hanson not guilty of those specifications. The trial court subsequently sentenced Hanson to six years in prison.
 {¶ 23} Hanson appeals, raising a single assignment of error:
 {¶ 24} "The trial court erred to the prejudice of appellant when it denied his motion to suppress."
 Fourth Amendment Issues {¶ 25} In his first assignment of error, Hanson argues that the trial court erred in denying his motion to suppress.
 {¶ 26} Appellate review of a suppression ruling involves mixed questions of law and fact. See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19, 20. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Burnside at _8. But, the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 27} Hanson contends that the trial court should have granted his motion to suppress because (1) the deputies searched his home without a valid warrant or consent; (2) their intrusion into his bedroom closet exceeded the scope of a *Page 11 
valid protective sweep; (3) the digital scale was not in plain view; and (4) the deputies elicited Hanson's confession without giving him hisMiranda warnings. These arguments, however, are not supported by the record.
 {¶ 28} "The Fourth Amendment to the United States Constitution provides in part: `the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***.' The Fourth Amendment to the United States Constitution and Section 14, Article One, of the Ohio Constitution require the police to obtain a warrant based upon probable cause before they conduct a search." State v. Rankin, 8th Dist. No. 88866, 2007-Ohio-4844, at _20, citing Coolidge v. New Hampshire (1971),403 U.S. 443.
 {¶ 29} The plain view doctrine, however, provides an exception to theFourth Amendment warrant requirement. See Coolidge, supra. "In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities." State v. Williams (1978), 55 Ohio St.2d 82, paragraph one of the syllabus. Here, we agree with the trial court's conclusion that the three prongs of the plain view test were met in this case. *Page 12 
 {¶ 30} First, it was undisputed below that the deputies entered the residence lawfully. They had a valid arrest warrant and were granted entry from Spratt. As for Detective Zickes' presence in the bedroom, the trial court found that Hanson impliedly granted consent by directing Detective Zickes to the bedroom to retrieve his clothing. We find that Detective Zickes' testimony is competent and credible evidence to support this finding. Accordingly, Detective Zickes' intrusion into the bedroom was lawful.
 {¶ 31} Second, Detective Zickes' discovery of the digital scale was inadvertent. Although Hanson argues that Spratt's testimony demonstrated that the deputies searched the bedroom and that the scale was not easily observable, the trial court obviously found her testimony not credible. Instead, the trial court believed Detective Zickes, who testified that he saw the digital scale near the bed after grabbing Hanson's clothes from the floor. The trial court was free to believe Detective Zickes, a 15-year police veteran, over Spratt-Hanson's girlfriend. See State v.Davis, 1st Dist. No. C-040818, 2005-Ohio-4139, ¶ 12. Indeed, Spratt's credibility was questionable based on her relationship to Hanson; her acknowledgment that she allowed Hanson to reside with her and her small children despite knowing that he was a felony fugitive with a history of drug convictions; and her denial of having any knowledge of the contraband found in the home. *Page 13 
 {¶ 32} Finally, we find that competent and credible evidence exists that the incriminating nature of the digital scale was immediately apparent. Detective Zickes specifically testified as to his specialized training in drug identification and his experience in investigating over 1,000 drug cases. Through his experience, Detective Zickes had seen the same type of digital scale "many, many times" in connection with drug cases. He further testified that he immediately observed what appeared to be cocaine residue on the digital scale. Thus, the third prong of theWilliams test is satisfied.
 {¶ 33} Because the plain view exception applies in the instant case, Hanson's challenge regarding an improper protective sweep is misplaced. Indeed, the record reflects that the deputies did not conduct a protective sweep in this case. Although the deputies later retrieved drugs from the closet, after the digital scale was discovered in plain view, Hanson told them where to find the drugs and therefore consented to their seizure. Further, the circumstances surrounding Hanson's consent, i.e., the presence of the contraband in his girlfriend's home and his desire to exculpate her, supports the trial court's finding that he voluntarily consented to avoid implicating his girlfriend.
 {¶ 34} Finally, we find no merit to Hanson's claim that his confession was elicited prior to being Mirandized. Hanson contends that "[t]he State bears the burden of proving that Mr. Hanson understood his right to remain silent when *Page 14 
asked if there were other drugs or contraband in the house." The state met its burden: Detective Zickes testified that he read Hanson hisMiranda rights prior to Hanson confessing to the drugs and money.
 {¶ 35} In summary, the trial court weighed the conflicting testimony of Detective Zickes and Spratt and denied the motion to suppress. The finding that the digital scale was in plain view and that Hanson subsequently consented to the seizure of the other contraband was supported by competent, credible evidence. Accordingly, Hanson's single assignment of error is overruled.
 {¶ 36} Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 15 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and SEAN C. GALLAGHER, J., CONCUR
[1] The deputies were acting on a tip received from Crime Stoppers as to Hanson's location.
[2] Detective Zickes previously testified that he had investigated over 1,000 drug cases in his career and that he had specialized training in drug identification. He further testified that he had seen that type of digital scale "many, many times" in connection with drug cases. *Page 1